[No. 21425-3-II.   Division Two.   September 4, 1998.]

JACOB ERIE, *Appellant*, v. KIRK WHITE, ET AL., *Respondents*.

---

R. *Andrew Bergh* of *Pence & Dawson*, for appellant.

*Timothy J. Whitters* of *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim*, for respondents.

MORGAN, J. — Jacob Erie sued Kirk White for negligently supplying equipment that Erie knowingly and voluntarily used to cut a tree. White moved for summary judgment, arguing assumption of risk. The trial court granted the motion, and we affirm.

At the outset, it is necessary to understand the difference between tree-climbing equipment and pole-climbing equipment, as described in the record here. A person using either type of equipment wears a belt or harness with a metal ring on each side. He or she clips a safety strap into one metal ring, wraps it around the tree or pole, then clips it into the other ring. With tree-climbing equipment, the safety strap is reinforced with steel cable, so that a person using a chain saw will not saw through it accidentally. With pole-climbing equipment, the strap is made of leather and lacks steel reinforcement. Both types of equipment include spurs designed to give traction while ascending and descending.

On February 28, 1993, Kirk White,[1] a homeowner in Pierce County, wanted to hire someone to cut down trees on his property. Thus, he responded to a classified ad in the newspaper that read:

---

[1] Kirk's wife, Linda, is also a party to the suit, but for convenience we refer only to him.

DEPENDABLE Hauling,
yard cleanups, tree trim-
ming & removal. Free Est.
Sr Disc. Paul 589-2433[2]

White talked with a person named Paul Ortiz, who said he would send over "a guy working for him that does the tree work."[3] Erie arrived a short time later, and White hired him for $150.[4]

Early on Monday, March 1, Erie rented tree-climbing equipment at a local rental store. He then went to White's residence and worked all day cutting trees. He was not finished at the end of the day, but neither was he planning to return the next day. He did not think White was paying him enough for a second day, and he was having trouble with his rented spurs, which were digging into his legs and making them sore. When he got off work, he returned the tree-climbing equipment to the rental store.

Erie did not work the next day, Tuesday, March 2. However, he received several phone calls from White, urging him to come back and finish the job. Erie agreed, but only if White would pay another $100 and supply the climbing equipment.

When Erie went to White's on Wednesday morning, March 3, White had climbing equipment on hand. Erie looked at it and immediately realized that it was pole-climbing equipment with a leather, nonreinforced safety strap. Nonetheless, he agreed to use it, later testifying as follows:

Q: Tell me what happened there at the site? . . .

. . . .

A: . . . I was looking at the equipment that [White] rented. I said, this is pole[-]climbing equipment, but I can work with

---

[2]Clerk's Papers at 368, 369.

[3]Clerk's Papers at 180.

[4]The parties disagree over the details of this encounter, but their disagreements are not material.

it because I only had a couple hours of work left to do. I figured it would be safe enough for me to just get in there and get the job done and get out of there, get my hundred bucks, and go home.

Q: So you looked at the equipment. You knew that it was not the type of equipment that you were used to working with?

A: Exactly.

Q: But you believed that it would work?

A: Yes.

Q: Did you discuss that subject with Mr. White?

A: Yes, I did. I talked to him about the leather belt that wasn't really a safety belt, but it would work. It was just something that held you to the tree or the pole. Because it was pole[-]climbing equipment; it wasn't tree[-]climbing equipment.

Q: So this isn't —

A: They call it linemen's equipment.

Q: . . . You actually discussed that with Mr. White?

A: Yes, I did.

Q: You told him that you can make this work?

A: Yep.

Q: You accepted it?

A: Yes, I did.[5]

An hour later, while working up in a tree, Erie accidentally cut through his safety strap with his chain saw. He fell and was injured.

On February 29, 1996, Erie sued White for negligently supplying him with pole-climbing equipment. White moved for summary judgment, and the trial court granted the motion. Erie then filed this appeal, in which the dispositive issue is assumption of risk.

[5]Clerk's Papers at 321.

■ Traditionally, the doctrine of assumption of risk has four facets: (1) express assumption of risk; (2) implied primary assumption of risk; (3) implied reasonable assumption of risk; and (4) implied unreasonable assumption of risk.[6] The third and fourth facets, implied reasonable and implied unreasonable assumption of risk, are nothing but alternative names for contributory negligence,[7] and neither is pertinent here. The first and second facets, express assumption of risk and implied primary assumption of risk, raise the same question: Did the plaintiff consent, before the accident or injury, to the negation of a duty that the defendant would otherwise have owed to the plaintiff?[8] If the answer is yes, "the defendant does not have the duty, there can be no breach and hence no negligence."[9] Thus, when either facet applies, it bars *any* recovery based on the duty that was negated.[10]

■ Although the first and second facets involve the same idea—the plaintiff's consent to negate a duty the defendant would otherwise have owed to the plaintiff—they differ with respect to the way in which the plaintiff

---

[6]*Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 143, 875 P.2d 621 (1994); *Scott v. Pacific W. Mt. Resort*, 119 Wn.2d 484, 496, 834 P.2d 6 (1992); *Kirk v. Washington State Univ.*, 109 Wn.2d 448, 453, 746 P.2d 285 (1987); *Shorter v. Drury*, 103 Wn.2d 645, 655, 695 P.2d 116, *cert. denied*, 474 U.S. 827 (1985); *Alston v. Blythe*, 88 Wn. App. 26, 32, 943 P.2d 692 (1997); *Leyendecker v. Cousins*, 53 Wn. App. 769, 773, 770 P.2d 675, *review denied*, 781 P.2d 1320 (1989); W. PAGE KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 68 (5th ed. 1984).

[7]*Scott*, 119 Wn.2d at 497; *see also Alston*, 88 Wn. App. at 32; *Leyendecker*, 53 Wn. App. at 774-75.

[8]*Scott*, 119 Wn.2d at 498; *Kirk*, 109 Wn.2d at 453-54; *Alston*, 88 Wn. App. at 33; *Dorr v. Big Creek Wood Prods., Inc.*, 84 Wn. App. 420, 426-27, 927 P.2d 1148 (1996).

[9]*Scott*, 119 Wn.2d at 497; *see also Tincani*, 124 Wn.2d at 143 (implied primary assumption of risk "is really a principle of no duty, or no negligence, and so denies the existence of the underlying action"); *Dorr*, 84 Wn. App. at 427 (implied primary assumption of risk "is only the counterpart of the defendant's lack of duty to protect the plaintiff from that risk") (quoting *Scott*, 119 Wn.2d at 498 n.30); *Alston*, 88 Wn. App. at 33; *Leyendecker*, 53 Wn. App. at 773.

[10]*Scott*, 119 Wn.2d at 496-98; *Alston*, 88 Wn. App. at 33; *Dorr*, 84 Wn. App. at 425; *Leyendecker*, 53 Wn. App. at 773.

manifests consent.[11] With express assumption of risk, the plaintiff states in so many words that he or she consents to relieve the defendant of a duty the defendant would otherwise have. With implied primary assumption of risk, the plaintiff engages in other kinds of conduct, from which consent is then implied.[12] Here, we focus on implied consent, which we alternatively refer to as assumption of risk.

To invoke assumption of risk, a defendant must show that the plaintiff knowingly and voluntarily chose to encounter the risk.[13] Thus, "[t]he evidence must show that the plaintiff (1) had full subjective understanding, (2) of the presence and nature of the specific risk, and (3) voluntarily chose to encounter that risk."[14] Put another way, the plaintiff "must have knowledge of the risk, appreciate and understand its nature, and voluntarily choose to incur it."[15] Knowledge and voluntariness are questions of fact for the jury, except when reasonable minds could not differ.[16]

Whether a plaintiff decides *knowingly* to encounter a risk turns on whether he or she, at the time of decision, *actually and subjectively* knew all facts that a reasonable person in the defendant's shoes would know and disclose, or, concomitantly, all facts that a reasonable person in the

---

[11]*Kirk*, 109 Wn.2d at 453; *Alston*, 88 Wn. App. at 33; *Leyendecker*, 53 Wn. App. at 773-74.

[12]*Alston*, 88 Wn. App. at 33 ("Those who choose to participate in sports or other amusements likely to cause harm to the participant, for example, impliedly consent in advance to excuse the defendant from any duty to protect the participant from being injured by the risks inherent in such activity."); *see also Scott*, 119 Wn.2d at 496-97; *Kirk*, 109 Wn.2d at 453.

[13]*See* RESTATEMENT (SECOND) OF TORTS § 496 G (defendant has burden of proof on assumption of risk).

[14]*Kirk*, 109 Wn.2d at 453; *Wagenblast v. Odessa School Dist. No. 105-157-166J*, 110 Wn.2d 845, 858, 758 P.2d 968 (1988).

[15]*Shorter*, 103 Wn.2d at 656 (citing W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 68, at 486-87 (5th ed. 1984); *Martin v. Kidwiler*, 71 Wn.2d 47, 49, 426 P.2d 489 (1967); *Bailey v. Safeway Stores, Inc.*, 55 Wn.2d 728, 731, 349 P.2d 1077, 1078 (1960).

[16]*See Alston*, 88 Wn. App. at 34 (consent is question of fact for jury except when reasonable minds could not differ).

plaintiff's shoes would want to know and consider.[17] Thus, "The test is a subjective one: Whether the plaintiff in fact understood the risk; not whether the reasonable person of ordinary prudence would comprehend the risk."[18] The plaintiff must "be aware of more than just the generalized risk of [his or her] activities; there must be proof [he or she] knew of and appreciated the specific hazard which caused the injury."[19] And a plaintiff "appreciates the specific hazard" only if he or she actually and subjectively knows all facts that a reasonable person in the defendant's shoes would know and disclose, or, concomitantly, all facts that a reasonable person in the plaintiff's shoes would want to know and consider when making the decision in issue.

Whether a plaintiff decides *voluntarily* to encounter a risk depends on whether he or she elects to encounter it despite knowing of a reasonable alternative course of action.[20] Thus, Division One has said that in order for assumption of risk to bar recovery, the plaintiff "must have had a reasonable opportunity to act differently or proceed

---

[17]Put another way, the question turns on whether plaintiff actually and subjectively knew all facts that the defendant should have known and disclosed in the exercise of ordinary care, and all facts that the plaintiff should have known and considered in the exercise of ordinary care.

[18]*Shorter*, 103 Wn.2d at 656-57.

[19]*Id.* at 657; *see also Klein v. R.D. Werner Co.*, 98 Wn.2d 316, 319, 654 P.2d 94 (1982) ("evidence must show that respondents knew of specific defect causing their injuries before the assumption of risk doctrine applies"); *Martin*, 71 Wn.2d at 50 (there must be not only "knowledge of a general danger," but also knowledge of the "particular danger," and "the knowledge and appreciation [of danger] by the plaintiff is to be directed toward the particular danger or risk which ends in the plaintiff's injury"); RESTATEMENT (SECOND) OF TORTS § 496 D cmt. b (plaintiff "must not only be aware of the facts which create the danger, but must also appreciate the danger itself and the nature, character, and extent which make it unreasonable").

Incidentally, this requirement of subjective knowledge is what separates assumption of risk and contributory negligence. Assumption of risk turns on what the plaintiff *did* know: *Did* he or she know all facts that a reasonable person in the defendant's shoes would have known? Contributory negligence turns on what the plaintiff *should* have known, or in alternative terms what a reasonable person in the plaintiff's shoes *would* have known, irrespective of what the plaintiff actually and subjectively knew.

[20]*Zook v. Baier*, 9 Wn. App. 708, 716, 514 P.2d 923 (1973); RESTATEMENT (SECOND) OF TORTS § 496 E.

on an alternate course that would have avoided the danger."[21] And the RESTATEMENT comments:

> Since the basis of assumption of risk is the plaintiff's willingness to accept the risk, take his chances, and look out for himself, his choice in doing so must be a voluntary one. If the plaintiff's words or conduct make it clear that he refuses to accept the risk, he does not assume it. The plaintiff's mere protest against the risk and demand for its removal or for protection against it will not necessarily and conclusively prevent his subsequent acceptance of the risk, if he then proceeds voluntarily into a situation which exposes him to it. Such conduct normally indicates that he does not stand on his objection, and has in fact consented, although reluctantly, to accept the danger and look for himself.[22]

Two cases illustrate. In *Dorr v. Big Creek Wood Prods., Inc.*,[23] Knecht was logging at a remote site. His friend Dorr, also a logger, came to visit. Before approaching Knecht's position, Dorr looked for "widow-makers"—limbs from felled trees caught high in the branches of standing trees. Failing to see any, he walked toward Knecht. As he walked, he was hit and injured by a falling widow-maker that he had not seen. If he had seen it, realized the danger it posed, and decided to hurry under it, he would have actually and subjectively known all facts that a reasonable person would have known and disclosed (which is the same as to say he would have "appreciated the specific hazard which caused the injury"),[24] and he would also have known of a reasonable alternative course of action (e.g., remaining where he was, or walking around the area into which the widow-maker might fall). Thus, he would have knowingly and voluntarily assumed the risk. As it was, however, he failed to see the particular widow-maker, and he did not have the kind of subjective knowledge that is a prerequisite to assuming a risk. At most, he was contributorially negligent.

---

[21]*Zook v. Baier,* 9 Wn. App. at 716.

[22]RESTATEMENT (SECOND) OF TORTS § 496 E cmt. a.

[23]84 Wn. App. 420, 927 P.2d 1148 (1996).

[24]*Shorter,* 103 Wn.2d at 657.

In *Alston v. Blythe*,[25] Alston wanted to walk from east to west across an arterial with two northbound and two southbound lanes. A truck driven by McVay stopped in the inside southbound lane, and McVay waved her across in front of him. A car in the outside southbound lane did not stop and struck her as she stepped out from in front of the truck. If Alston had seen the oncoming car, realized the danger, and decided to hurry across in front of it instead of waiting for it to pass, she would have known the facts that a reasonable person would have known and disclosed (which is to say she would have appreciated the specific risk), and she would have assumed the risk. As it was, however, she did not know the car was coming, and she did not have the knowledge required by the doctrine of assumption of risk. At most, she was contributorially negligent.

In this case, reasonable minds could not differ on whether Erie knew all facts a reasonable person would have known, and thus appreciated the specific risk; he himself testified that when he looked at the equipment, he realized it was pole-climbing equipment that did not have the steel-reinforced safety strap needed when using a chain saw high in a tree. Nor could reasonable minds differ on whether Erie had reasonable alternative courses of action; it is indisputable that he could have gone to a rental store for the right kind of equipment, required White to do that, or simply declined to proceed.[26] Thus, reasonable minds could not differ over whether Erie knowingly and voluntarily assumed the risk, and the trial court did not err by ruling as it did.

Affirmed.

---

[25]88 Wn. App. 26, 943 P.2d 692 (1997).

[26]Erie may be contending that his will was overborne by White's numerous phone calls on Tuesday, or by fear that White would not tolerate the delay that would ensue if one of them went for the right equipment. If he is, the evidence will not support a finding that those considerations rendered his decision to proceed involuntary. This does not mean that an employee's decision may never be rendered involuntary by pressure from his or her employer, but it does mean that in this case, involving a one-time, ad hoc job, a jury could not find that White exerted pressure to such an extent as to render Erie's decision involuntary.

HOUGHTON, C.J., and BRIDGEWATER, J., concur.

Review denied at 137 Wn.2d 1022 (1999).