216 P.3d 416 (2009)
Robert L. WIRTZ, Appellant,
v.
David and Diana GILLOGLY, individually and as a marital community; Dennis and Melinda Gillogly, individually and as a marital community, Respondents.
No. 37708-0-II.
Court of Appeals of Washington, Division 2.
June 23, 2009.
Publication Ordered September 1, 2009.
*417 Kerry Martin Smith, Smith & Fjelstad, Gresham, OR, for Appellant.
Michael A. Lehner, Lehner & Rodrigues, C, Portland, OR, for Respondents.
Dennis Gillogly, Castle Rock, WA, pro se.
Melinda Gillogly, Castle Rock, WA, pro se.
HUNT, J.
¶ 1 Robert L. Wirtz appeals the trial court's summary judgment dismissal of his negligence claims against Dennis and David Gillogly and their marital communities. He argues that the trial court erred in (1) concluding that Wirtz assumed the risk of injury associated with felling trees on David Gillogly's property and (2) failing to distinguish between Wirtz's status on the property as an invitee rather than a licensee. Holding that Wirtz knowingly and voluntarily consented to participate in the tree-felling project and, thus, assumed the risks involved, we affirm the trial court's grant of summary judgment in the Gillogly's favor. Accordingly, we need not reach Wirtz's second argument about his legal status.

Facts

I. Tree-Felling Accident
¶ 2 In February 2003, Dennis Gillogly (Dennis)[1] asked longtime friend Robert Wirtz to help with a tree-felling project on Dennis's father's (David Gillogly) Longview property to prevent interference with nearby cable television lines. Wirtz agreed to assist the Gilloglys as a favor; he neither requested nor received anything of value in exchange for his help. Dennis had some experience felling trees as a seasonal firefighter for the forest service, from which he had received a tree-felling certificate. Wirtz, however, had no tree-felling experience.
¶ 3 On the first day of the tree-felling project, Dennis offered Wirtz a hardhat, but Wirtz refused to wear it. During the first few days of work, Wirtz helped by stacking wood with David after Dennis cut the logs into rounds, but he (Wirtz) did not cut the wood or assist in felling the trees. David also monitored the work.[2]
¶ 4 After several days, Dennis asked Wirtz to help him fell a tree that stood close to the property's cable television lines.[3] To avoid hitting the lines, (1) David and Dennis decided to set a cable around the tree's trunk to ensure that it would fall uphill; and (2) Dennis notched the tree with his chainsaw to *418 make it fall uphill. Wirtz wrapped a cable around the tree's trunk, 20-30 feet above the ground; David secured the cable, using a "come along ratchet"[4] to tighten the lines so they would not drag. Both Dennis and David had used this method to fell trees in the past.
¶ 5 The men decided that Dennis would cut the tree with a chainsaw while Wirtz operated the ratchet to keep the cable lines taut.[5] David stood at the driveway, and Wirtz waited for his signal to begin operating the ratchet. As Dennis cut the tree, David intermittently signaled to Wirtz to use the ratchet to tighten the cables. During the felling process, the tree's trunk split; Dennis stopped sawing to discuss how to proceed.
¶ 6 David and Dennis determined what to do, they informed Wirtz, and Wirtz and Dennis resumed felling the tree. Moments later, the tree split from the point where Dennis had applied the chainsaw; the splitting tree broke at the cable line. Wirtz tried to move out of the way, but the broken part of the tree hit him in the head, knocking him unconscious. When he awoke, he was bleeding from one ear[6]; Dennis and David were standing over him. David and Dennis then took Wirtz to the hospital.

II. Procedure

A. Wirtz's Negligence Complaint
¶ 7 On February 27, 2006, Wirtz filed a personal injury action for damages against David and Diana Gillogly, individually and as a marital community, and Dennis and Melinda Gillogly, individually and as a marital community. Wirtz alleged that the Gilloglys were negligent in (1) letting Wirtz remove trees without safety equipment; (2) failing to provide him with safety equipment, including a hardhat; (3) creating/maintaining dangerous conditions on their property; (4) failing to exercise ordinary care for him; and (5) failing to provide him with appropriate training for felling trees on their property. Wirtz further alleged that as a result of the defendants' negligence, he suffered economic damages and personal injuries in an amount to be determined at trial. Wirtz also broadly requested actual, special, general, compensatory, and noneconomic damages, plus costs and disbursements.

B. Depositions

1. Wirtz
¶ 8 During his deposition, Wirtz testified that although Dennis had asked him to wear a hardhat, he (Wirtz) had refused because "we were just stacking wood." Wirtz testified that he had watched Dennis fell three trees and he had observed that they came down with great force. Although he (Wirtz) had observed that Dennis wore a hardhat when felling the trees, he (Wirtz) did not think about asking Dennis for a hardhat when he (Wirtz) began participating in the tree-felling several days later.
¶ 9 Wirtz described the events leading up to the accident as follows: (1) Dennis had cut the tree while he (Wirtz) waited for David's signal to use the ratchet, located approximately 30 feet from the tree's base; (2) he (Wirtz) had been standing uphill from the tree and expected the tree to fall in that direction; (3) he (Wirtz) had known there was a possibility that the tree's branches could reach him when the tree fell and that if he slipped or lost balance as the tree fell, he might not be able to avoid being hit; (4) therefore, he (Wirtz) had planned an escape route to move behind a very large nearby tree for protection; and (5) he (Wirtz) had known there was some risk involved in the work.

2. Dennis
¶ 10 Dennis testified at his deposition that he had received professional tree-felling training during his job with the United States Forest Service. As part of that training, *419 he had learned how to use cables and ratchets to assist in the tree-felling process. Before asking Wirtz to help fell the tree, he (Dennis) had explained the process, describing how to use the cable and ratchet method.
¶ 11 Dennis had brought two hardhats to the work site, along with gloves and earplugs. Dennis testified that on the first day of work, he did not offer a hardhat to Wirtz because they were not doing any overhead work. On the second day, however, when Dennis prepared to fell trees, he offered a hardhat to Wirtz, but Wirtz refused to wear it because it had stickers with flowers on it. And on the day Wirtz felled trees, he (Dennis) offered Wirtz the other, brand new hardhat, but Wirtz again declined the offer.

3. David
¶ 12 At David's deposition, he testified that (1) he, Dennis, and Wirtz had discussed whether to use the ratchet and cable system; (2) both he and Dennis had explained to Wirtz how this system worked because they recognized that Wirtz lacked experience felling trees; (3) on the day Wirtz participated in felling the tree, he (David) had offered Wirtz a hardhat as they started setting up in the morning, but Wirtz had refused; (4) he (David) had told Wirtz that the tree could hit him as it fell and that "It's better to be safe than sorry," but Wirtz still refused, saying that "he'd be okay"; and (5) immediately before Wirtz began helping Dennis with the ratchet and cable, he (David) had again told Wirtz, "Now would be the time to put a hardhat on," but, again, Wirtz had refused. After the tree had split, David again told Wirtz, "I don't know what [the tree] is going to do for sure." David advised Wirtz that he did not have to continue with the project.

C. Motion for Summary Judgment
¶ 13 David and Diana moved for summary judgment. They contended that because Wirtz knew about the risks involved in tree felling, his assumption of that risk negated any duty that the defendants might have owed him and, thus, barred his negligence claims. The trial court agreed, ruled that Wirtz had assumed the risk of injury when he participated in the tree-felling activity, and granted summary judgment in the Gilloglys' favor. To save time and the expense of filing a separate motion for summary judgment, the parties signed a stipulated order granting summary judgment in favor of Dennis and his wife Melinda,[7] who had appeared pro se.
¶ 14 Wirtz appeals.

ANALYSIS
¶ 15 The dispositive issue is whether Wirtz assumed the risk of injury from a falling tree when he participated in the Gilloglys' tree-removal project. We agree with the trial court and answer, "Yes."

I. Wirtz's Assumption of Risk
¶ 16 Wirtz argues that the trial court erred in granting summary judgment in the Gilloglys' favor based on its determination that Wirtz assumed the risk. We disagree.

A. Standard of Review
¶ 17 In reviewing an order for summary judgment, we apply the same standard as the trial court. Parrott Mech., Inc. v. Rude, 118 Wash.App. 859, 864, 78 P.3d 1026 (2003). We review an order for summary judgment de novo, viewing all evidence in the light most favorable to the nonmoving party. Port of Seattle v. Lexington Ins. Co., 111 Wash.App. 901, 906, 48 P.3d 334 (2002). Summary judgment is proper when the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to the judgment as a matter of law. Port of Seattle, 111 Wash.App. at 906, 48 P.3d 334.

B. Assumption of Risk
¶ 18 Washington courts have held that assumption of risk traditionally has four facets: (1) express assumption of risk, (2) implied primary assumption of risk, (3) implied reasonable assumption of risk, and (4) *420 implied unreasonable assumption of risk. Erie v. White, 92 Wash.App. 297, 302, 966 P.2d 342 (1998), review denied, 137 Wash.2d 1022, 980 P.2d 1280 (1999). The parties agree that the theory at issue here is "implied primary assumption of risk." Implied primary assumption of risk arises when (1) the plaintiff impliedly consents to relieve the defendant of a duty to him (plaintiff) about specific, known, and appreciated risks, Scott v. Pac. W. Mountain Resort, 119 Wash.2d 484, 497, 834 P.2d 6 (1992); and (2) the plaintiff engages in conduct, from which consent is implied. Erie, 92 Wash.App. at 303, 966 P.2d 342 (citing Alston v. Blythe, 88 Wash.App. 26, 33, 943 P.2d 692 (1997)). To prove that the plaintiff assumed the risk, the defendant must show that the plaintiff knowingly and voluntarily chose to encounter it. Erie, 92 Wash.App. at 303, 966 P.2d 342 (citing Restatement (Second) of Torts § 496G (1965)). Knowledge and voluntariness are questions of fact for the jury, except when reasonable minds could not differ. Id. at 303, 966 P.2d 342 (citing Alston, 88 Wash. App. at 33, 943 P.2d 692).
¶ 19 Our decision in Erie illustrates the doctrine of assumption of risk in an analogous context. Erie was using pole-climbing equipment to fell a tree when he accidentally cut through his safety strap with a chainsaw, fell to the ground, and was injured. Erie, 92 Wash.App. at 300-01, 966 P.2d 342. Erie alleged that White had negligently supplied him with the wrong equipment. But the trial court granted White's summary judgment motion, ruling that Erie had assumed the risk because he knowingly and voluntarily participated in the activity. Id. at 301, 966 P.2d 342.
¶ 20 On appeal, we noted that to sustain summary judgment, the evidence must show that Erie had a full subjective understanding of the presence and nature of the risk and still voluntarily chose to encounter it. Id. at 303, 966 P.2d 342.[8] We also stated that whether a plaintiff decides to act voluntarily to encounter a risk depends on whether he knows about a reasonable, alternative course of action. Id. at 304, 966 P.2d 342 (citing Zook v. Baier, 9 Wash.App. 708, 716, 514 P.2d 923 (1973)). The plaintiff must be aware of more than just the generalized risk of his activities; he must also appreciate the specific hazard which caused the injury. Erie, 92 Wash.App. at 304, 966 P.2d 342 (citing Martin v. Kidwiler, 71 Wash.2d 47, 49-50, 426 P.2d 489 (1967)[9] (the plaintiff must have knowledge of the risk, appreciate its nature, and voluntarily choose to incur it.))
¶ 21 The evidence showed that Erie (1) knew he needed a metal-backed safety strap and (2) had reasonable alternative courses of action because he could have used different equipment, asked White to do the work, or simply declined to proceed. Erie, 92 Wash. App. at 306, 966 P.2d 342. Therefore, we affirmed the trial court's summary judgment dismissal of Erie's complaint, holding that reasonable minds could not differ about whether Erie had knowingly and voluntarily assumed the risk. Id.

C. Wirtz Assumed the Risk
¶ 22 Similarly here, reasonable minds could not differ about whether Wirtz knowingly and voluntarily assumed the risk inherent in felling trees. We address both Erie factors in turn.

1. Knowledge
¶ 23 We first examine the knowledge component. As the Gilloglys correctly argue, Wirtz consented to operate the ratchet and cable system to cause the tree to fall in his direction, knowing that the tree could strike him. The record further demonstrates that despite his inexperience, Wirtz (1) observed the tree-felling process for several days before actually participating in it; (2) discussed *421 the tree-felling and ratcheting processes with the Gilloglys; (3) recognized that using the ratchet and cable system would guide the falling tree uphill, toward where he was standing; and (4) planned an escape route to avoid the falling tree because he knew that it could hit him.
¶ 24 Moreover, as Wirtz himself testified, he had observed Dennis wearing a hardhat while felling trees. Although Dennis and David had repeatedly offered Wirtz a hardhat, Wirtz had repeatedly refused to wear one, apparently, because he did not think that he needed one. Accordingly, under Erie, we hold that because Wirtz appreciated the risk involved in the tree-felling process, no reasonable juror could conclude that he acted without knowledge of the associated risks.

2. Voluntariness
¶ 25 We next examine the voluntariness component. As the Gilloglys note in their briefing, there is no evidence that they compelled Wirtz to assist them with the work. The Gilloglys did not offer to pay or otherwise to compensate Wirtz for his assistance; nor did they pressure him to participate. Wirtz could have simply refused to help at any step in the process if he felt uncomfortable with the work; but he voiced no concerns about the project nor refused to participate.
¶ 26 If Wirtz had felt uncomfortable with the tree-felling process or concerned for his safety, he could have refused to assist in that activity and limited his involvement to stacking wood. After the tree split, David specifically advised Wirtz that he could stop the process if he felt uncomfortable continuing. But in spite of his own observations and David's warnings, Wirtz chose to continue participating in the tree-felling process without wearing a hardhat. Consequently, as in Erie, because Wirtz had reasonable alternative courses of action available to him but elected to continue felling the tree, no reasonable juror could conclude that his acts were involuntary.
¶ 27 Wirtz emphasizes that he and the Gilloglys proceeded with the felling process even after the trunk had split; but there is no evidence that the split in the tree trunk materially altered the risk that Wirtz had already assumed. Wirtz knew that he was participating in tree-felling, had observed the others doing it, had volunteered to do it, and persisted even after the tree split and David again offered him an opportunity to opt out. Therefore, reasonable minds could not differ that Wirtz assumed the risk of participating in the tree-felling activity, thus relieving the Gilloglys of liability for his injury. Reviewing the trial court's ruling de novo and viewing the record in the light most favorable to Wirtz, we affirm the trial court's summary judgment dismissal of his complaint.

II. Wirtz's Status as AN INVITEE or a Licensee
¶ 28 Wirtz also argues that he was an invitee, not a licensee, on David's property, and, because he conferred an economic benefit on the Gilloglys, they owed him the highest duty of care. Holding that Wirtz assumed the risk related to assisting the Gilloglys with the tree-felling activity, we need not reach this issue.
¶ 29 We affirm.
We concur: HOUGHTON, P.J., and QUINN-BRINTNALL, J.
NOTES
[1] To avoid confusion, we refer to the Gilloglys by their first names; we intend no disrespect.
[2] David was recovering from surgery at that time; thus, he could not help fell the trees.
[3] According to Wirtz, David asked him (Wirtz) to assist Dennis with the tree-felling. According to Dennis, Wirtz took the initiative, without being asked, because he (Wirtz) noticed that his help would be useful.
[4] The record indicates that a "come along ratchet" is a hand-operated ratchet-lever winch.
[5] David and Dennis apparently used this method to guide the trees away from the cable television lines as they fell.
[6] The record on appeal contains no other information about Wirtz's injury.
[7] Although Dennis and Melinda were not married at the time of Wirtz's accident, Wirtz had named them as defendants.
[8] Citing Kirk v. Wash. State Univ., 109 Wash.2d 448, 453, 746 P.2d 285 (1987); Shorter v. Drury, 103 Wash.2d 645, 656, 695 P.2d 116, cert. denied, 474 U.S. 827, 106 S.Ct. 86, 88 L.Ed.2d 70 (1985).
[9] The plaintiff appreciates the specific hazard only if he actually and subjectively knows all of the facts that a reasonable person in the defendant's shoes would know or disclose, or, concomitantly, all the facts that a reasonable person in the plaintiff's shoes would want to know and consider when making the decision at issue. Id. at 304, 966 P.2d 342.