[No. 30636-4-III.   Division Three.   February 5, 2013.]

LIZABETH JESSEE, *Appellant*, v. THE CITY COUNCIL OF DAYTON, *Respondent*.

*Marshall S. Wolfram*, for appellant.

*Michael E. McFarland Jr.*, for respondent.

¶1 SWEENEY, J. — The plaintiff here tripped, fell, and injured herself on an old firehouse stairway. The stairway did not comply with current building codes—the rise was too tall, the run was too small, and there was no handrail. The court summarily dismissed the suit after concluding that the plaintiff had voluntarily assumed the risk of injury.

She had commented on the specific shortcomings of the stairway before encountering the risk those shortcomings posed. We agree that the plaintiff here voluntarily assumed the risk of injury, the defendant then had no duty to protect her, and the court therefore properly dismissed her suit for damages.

## FACTS

¶2 Columbia County and the city of Dayton (City) put on a joint emergency management exercise. Columbia County provided the City with emergency management services in exchange for financial and in-kind contributions. Columbia County asked Lizabeth Jessee to observe and evaluate the exercise. Ms. Jessee worked for the Walla Walla County Emergency Management Department.

¶3 The exercise was in the morning with an "after action review" in the afternoon. The "after action review" was at Columbia County's emergency operations center on the second floor of the City's Old Fire Station.

¶4 The Old Fire Station's staircase was wooden except for the first two stairs, which were poured concrete. The rise of the two concrete stairs was 7.5 inches; that is a half inch taller than Uniform Building Code requirements. The tread depth was 10.5 inches; that is a half inch narrower than the Uniform Building Code requirements and 2.5 inches narrower than the Life Safety Code recommendations. The cement stairs also had no handrail. Near the cement stairs, there was a grate with a large hole in it and some bolts protruding from a wall.

¶5 Ms. Jessee noticed that the cement steps seemed taller than "normal" stairs and that there was no handrail, and she commented that the stairs were not "ADA compliant"[1] and looked "unsafe," all before she climbed the stairs. Clerk's Papers (CP) at 37-38, 42-43. She had trouble bal-

---

[1] Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213.

ancing on the first two stairs but successfully climbed the stairs. She, however, misjudged the depth of the last two cement steps as she descended the stairway, rolled her left ankle, and fell. She put her right foot through the grate's hole and scraped her back on the bolts as she fell.

¶6 Ms. Jessee sued the City for damages and claimed negligence. The City moved for summary judgment. It argued that Ms. Jessee had assumed the risk of injury because she knew the risk posed by the condition of the stairway and voluntarily chose to use it anyway. The court concluded that whether Ms. Jessee was an invitee or a licensee was a material issue of fact and therefore primary assumption of the risk did not completely bar recovery. The court denied the City's motion for summary judgment.

¶7 The City then moved for reconsideration and argued that its liability did not turn on whether Ms. Jessee was an invitee or a licensee. The City argued that the dispositive inquiry was whether Ms. Jessee knew the stairs were dangerous and yet chose to use them anyway. The court reconsidered the earlier ruling, agreed with the City and summarily dismissed her suit.

## DISCUSSION

¶8 Our review of an order on a motion for summary judgment is, of course, de novo. *Charlton v. Toys "R" Us – Del., Inc.*, 158 Wn. App. 906, 910, 246 P.3d 199 (2010). Ms. Jessee had to avoid summary judgment by showing a duty on the part of the City, breach of that duty, and that her damages resulted from the breach of that duty. *Id.* at 912.

¶9 The court ultimately concluded that Ms. Jessee assumed the risk of injury and that this voluntary assumption of risk relieved the City of liability. The material facts here are undisputed: the condition of the stairs and Ms. Jessee's knowledge and appreciation of the condition of those stairs. So the only question is whether those facts support the City's defense that she assumed the risk of

injury as a matter of law. *Wirtz v. Gillogly*, 152 Wn. App. 1, 8, 216 P.3d 416 (2009).

¶10 Court decisions over the years have developed four varieties of assumption of risk. *Gregoire v. City of Oak Harbor*, 170 Wn.2d 628, 636, 244 P.3d 924 (2010). Some varieties completely bar recovery and some are subsumed by contributory negligence and therefore do not completely bar recovery. *Id.*

¶11 We are here concerned with so-called implied primary assumption of the risk because it was on that basis that the court dismissed Ms. Jessee's suit. CP at 38-40. The question in implied primary assumption of the risk is whether the plaintiff appreciated the risk of injury and, nonetheless, voluntarily chose to encounter that risk. *Erie v. White*, 92 Wn. App. 297, 303, 966 P.2d 342 (1998). If the answer to that question is yes here, then the City had no duty to Ms. Jessee and therefore could not be negligent. *See Alston v. Blythe*, 88 Wn. App. 26, 33, 943 P.2d 692 (1997). Implied primary assumption of risk is a complete bar to recovery. *Id.*

¶12 The City had to prove implied primary assumption of the risk by showing that Ms. Jessee "(1) had full subjective understanding (2) of the presence and nature of the specific risk, and (3) voluntarily chose to encounter the risk." *Kirk v. Wash. State Univ.*, 109 Wn.2d 448, 453, 746 P.2d 285 (1987). That is, the City had to show that she knowingly and voluntarily chose to encounter the risk. *Erie*, 92 Wn. App. at 303. If reasonable minds could not differ on the knowledge and voluntariness, there is implied primary assumption of the risk as a matter of law. *Wirtz*, 152 Wn. App. at 8.

¶13 A plaintiff has knowledge if she, "at the time of decision, actually and subjectively knew . . . all facts that a reasonable person in the plaintiff's shoes would want to know and consider" at the time she chose to incur the risk. *Home v. N. Kitsap Sch. Dist.*, 92 Wn. App. 709, 720, 965 P.2d 1112 (1998) (emphasis omitted). This requires that the

plaintiff have specific, rather than generalized, knowledge of risk. *Id.* at 720-21.

¶14 Ms. Jessee had specific knowledge of the risks inherent in descending these cement stairs. Indeed, the case here is a bit unique in that Ms. Jessee commented on the specific dangers (no handrail and non-code-compliant stair treads) that she later voluntarily encountered. She contends, nonetheless, that she did not know the specific risks because she had never descended those stairs before. But she admitted she had trouble balancing when she climbed them.

¶15 The concept of voluntariness required that the City show that Ms. Jessee elected "to encounter [the] risk . . . despite knowing of a reasonable alternative course of action." *Id.* at 721. A plaintiff's actions are voluntary if she voices concern about a risk, but ultimately accepts the risk. *Id.* at 721-22 (quoting RESTATEMENT (SECOND) OF TORTS § 496E cmt. a (1965)). A plaintiff's actions are voluntary when she feels compelled by outside considerations to take the risk. RESTATEMENT § 496E cmt. b. The *Restatement* gives two examples of this. In one, a plaintiff knows that a house is dangerous but rents it anyway because she cannot find or afford another. *Id.* In the second, a plaintiff knows that the defendant's car has faulty brakes but asks the defendant to drive her to the hospital because she is badly bleeding. RESTATEMENT § 496E cmt. b. illus. 1. In both examples, the plaintiff voluntarily assumes the risk.

¶16 The facts here are even more compelling than these examples. Ms. Jessee voluntarily assumed the risk inherent in the Old Fire Station's stairs. She voiced concern about the stairs, but she went up them anyway. Ms. Jessee suggests that her choice was involuntary because she was at work, was expected to attend the meeting, and did not choose the meeting place. However, these were her concerns. The City did not impose them on her.

¶17 Ms. Jessee also argues that even if she assumed the risk of the stairs, she did not assume the risk of the hole in the grate and the protruding bolts. Even when a plaintiff

assumed certain risks, "[t]o the extent a plaintiff's injuries resulted from other risks, created by the defendant, the defendant remains liable for that portion." *Kirk*, 109 Wn.2d at 455. In *Kirk*, a cheerleader injured herself when she fell on a hard surface during practice. *Id.* at 450-51. The court held that the university was not liable for the risks inherent to cheerleading, but was liable for the portion of the cheerleader's injuries created by risks caused by failing to adequately supervise the practice and providing an unsafe practice area. *Id.* at 454-55.

¶18 Ms. Jessee argues that she did not assume the risk of the hole in this grate or the protruding bolts even assuming she assumed the risk of the inadequate staircase. That is not helpful. Neither of those conditions caused her fall and she does not suggest otherwise. They may have caused further injury but that does not bear upon the central and dispositive question here—whether she knew the risk and voluntarily chose to encounter it.

¶19 We affirm the summary dismissal of this suit.

KORSMO, C.J., and KULIK, J., concur.