FILED
FEB 12, 2015
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| EDWARD C. HVOLBOLL, | ) | |
| | ) | No. 31836-2-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE WOLFF COMPANY DBA THE | ) | |
| WOLFF COMPANY, LLC DBA THE | ) | |
| WOLFF COMPANY II, LLC, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| HSC REAL ESTATE, INC. DBA | ) | |
| RIVERSTONE RESIDENTIAL DBA | ) | |
| RIVERSTONE RESIDENTIAL GROUP | ) | |
| DBA RIVERSTONE RESIDENTIAL | ) | |
| WEST, LLC; CONSOLIDATED | ) | |
| AMERICAN SERVICES; AND | ) | |
| PERRENOUD ROOFING | ) | UNPUBLISHED OPINION |
| INCORPORATED, | ) | |
| | ) | |
| Respondents. | ) | |

SIDDOWAY, C.J. — Edward Hvolboll appeals the summary judgment dismissal of

his personal injury lawsuit against owners and contracted maintenance providers to the

apartment complex where he lived, and where he slipped and fell on accumulated ice and

snow in January 2009. The trial court concluded that based on facts that were

undisputed, any reasonable jury would conclude that his claim was barred by the doctrine of implied primary assumption of risk.

Mr. Hvolboll argues that the defense of implied primary assumption of risk does not apply to landlord-tenant cases involving falls on snow and ice; if it does, he argues that material issues of disputed fact remain. We conclude that summary judgment was appropriately granted and affirm.

## FACTS AND PROCEDURAL BACKGROUND

Edward Hvolboll and his business partner, Travis Hitchcock, moved to the City of Spokane Valley in August 2008, where they rented an apartment in the Villages apartment complex. Mr. Hvolboll was born and raised in California and lived in warm areas his entire life. He had virtually no experience walking on snow or ice before the winter of 2008–2009.

During Mr. Hvolboll's first winter in Spokane, the area experienced a record snowfall. Mr. Hvolboll agrees that it snowed "somewhere in the neighborhood of 6 feet" during the month of December 2008. Clerk's Papers (CP) at 89.

Both Mr. Hvolboll and Mr. Hitchcock had difficulty negotiating icy and snowy areas of the apartment complex during December and January, prompting Mr. Hvolboll to document conditions and lodge complaints with the complex's management. Mr. Hvolboll conceded in deposition that the sidewalks at the complex were generally cleared

2

of snow, but he testified that snow and ice remained on the asphalt roadways even after they were plowed.

Mr. Hitchcock slipped and fell near a dumpster that served the men's apartment toward the end of December. When Mr. Hitchcock returned to the apartment, he told Mr. Hvolboll that "it was really slippery, and that he was going to complain about the ice buildup around the dumpster area." CP at 93. Mr. Hvolboll slipped but did not fall on "several occasions" while walking around the apartment complex, and complained to the property management about inadequate snow removal. CP at 93.

New snow fell on the first or second day of January and was plowed on January 2. Mr. Hvolboll took pictures before and after the plowing, at least in part to document his concern about inadequate snow removal. No new snow fell between January 2 and the January 7 date of Mr. Hvolboll's fall leading to this lawsuit.

Late in the morning on January 7, Mr. Hvolboll walked from his apartment to the outdoor common mailbox area to retrieve his mail. A sidewalk that had been cleared of snow led from Mr. Hvolboll's apartment to the mailbox area. He planned to walk to the property management office at the complex after he picked up his mail, in part to complain again about what he considered inadequate plowing, sanding, and deicing of the roadways.

From Mr. Hvolboll's perspective, the safest route to the property management office from the mailbox area was not over the cleared sidewalks, which required that he

3

cross the asphalt roadway adjacent to the mailbox area. Although the roadway had been plowed on January 2, there were still accumulations of snow and ice, especially on the sides of the road. A low berm of accumulated snow and ice ran between the sidewalk in front of the mailbox area and the relatively clear center of the roadway.

After checking his mail, Mr. Hvolboll began to walk across the snow and ice berm to cross the roadway. He was wearing slip resistant shoes, and later emphasized that he "had recognized that there was a potential hazard for slipping, and I was cautious. I did everything I could to minimize any risk." CP at 134. According to him, the sunny skies and warmer temperature on the morning of January 7 had caused water to pool on top of the ice. He began to slip with his first step and, with his second step, fell flat on his back, seriously injuring his right ankle.

In January 2012, Mr. Hvolboll filed a complaint for damages against six entities whom he alleged either owned the apartment complex or were agents having some responsibility for the condition of its walkways and roadways. His claims against two entities were dismissed without prejudice by a stipulated order.

In March 2013, three of the remaining defendants filed a joint motion for summary judgment, asserting that based on undisputed facts, Mr. Hvolboll's negligence claim was barred by the doctrine of implied primary assumption of risk. After reviewing the parties' briefing and hearing argument, the trial court agreed and dismissed all of Mr. Hvolboll's remaining claims. Mr. Hvolboll appeals.

4

ANALYSIS

The ground on which the defendants moved for summary judgment dismissal of Mr. Hvolboll's claims was their affirmative defense of assumption of the risk. They contended that before his fall, Mr. Hvolboll

> was fully aware of the slippery conditions, fully understood the risk of falling on the snow and ice, appreciated the presence and nature of that risk, and voluntarily chose to encounter it.

CP at 57. These facts, they argued, established implied primary assumption of risk.

Most of the applicable law is undisputed.

### Landlord duty

"The basis of any negligence action is the failure to exercise reasonable care when one has a *duty* to exercise such care." *Bodin v. City of Stanwood*, 130 Wn.2d 726, 744, 927 P.2d 240 (1996) (citing RESTATEMENT (SECOND) OF TORTS § 282 (1965)). In order to prevail on a negligence claim, a plaintiff must prove four elements: "(1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause." *Coleman v. Hoffman*, 115 Wn. App. 853, 858, 64 P.3d 65 (2003).

"The threshold determination of whether a duty exists is a question of law." *Coleman*, 115 Wn. App. at 858. Where the duty at issue is that of a possessor of land for the condition of the land, "[t]he common law classification of persons entering upon real property determines the scope of the duty of care owed." *Mucsi v. Graoch Assoc. Ltd.*

5

*P'ship No. 12*, 144 Wn.2d 847, 854-55, 31 P.3d 684 (2001). "A residential tenant is an invitee." *Id.* at 855.

Washington recognizes the general rule "that where an owner divides his premises and rents certain parts to various tenants, while reserving other parts such as entrances and walkways for the common use of all tenants, it is his duty to exercise reasonable care and maintain these common areas in a safe condition." *Geise v. Lee*, 84 Wn.2d 866, 868, 529 P.2d 1054 (1975). Landlords therefore have a general duty to keep common areas free from dangerous accumulations of snow and ice. *Id.* As with all possessors of land, however, when it comes to dangers that are "known or obvious" to invitees, landlords are generally not liable.

In *Iwai v. State*, 129 Wn.2d 84, 915 P.2d 1089 (1996) and *Mucsi*, the Washington Supreme Court analyzed a land possessor's responsibility for injuries arising from an invitee's fall on known or obvious accumulations of snow and ice, applying *Restatement (Second) of Torts* §§ 343 and 343A (1965), which our Supreme Court recognized as stating the appropriate standard for duties to invitees for known or obvious dangers in *Tincani v. Inland Empire Zoological Society*, 124 Wn.2d 121, 139, 875 P.2d 621 (1994). Section 343A of the *Restatement* provides in part that

> [a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

6

In both *Iwai* and *Mucsi*, the Supreme Court held that a trial court improperly dismissed the plaintiffs' slip and fall claims in light of section 343A(1)'s exception for instances where "the possessor should anticipate the harm despite . . . knowledge or obviousness." *Iwai*, 129 Wn.2d at 94; *Mucsi*, 144 Wn.2d at 859.

The comments to section 343A of the *Restatement* expand on reasons a possessor of land might expect harm to an invitee despite a known or obvious danger, explaining that

> [s]uch reason to expect harm . . . may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.

RESTATEMENT (SECOND) OF TORTS § 343A cmt. f (1965).

*Assumption of risk*

Even where a possessor of land owes a duty of care, it may raise a plaintiff's assumption of the risk as an affirmative defense. The doctrine of implied primary assumption of the risk has been recognized by Washington decisions and, when it applies, the plaintiff's consent negates any duty the defendant "would otherwise have owed to the plaintiff." *Home v. N. Kitsap Sch. Dist.*, 92 Wn. App. 709, 719, 965 P.2d 1112 (1998). The defendants in this case asserted assumption of the risk as an affirmative defense and it was the basis for their motion for summary judgment.

Mr. Hvolboll concedes that the doctrine of implied primary assumption of the risk is recognized by Washington decisions, but he argues that no reported Washington decision has applied it to a case in which a tenant slipped and fell on snow or ice, and that *Iwai* and *Mucsi* imply that it does not apply in such cases. Alternatively, he argues that if the defense is available in theory, it presented disputed issues of fact in his case.

*Standard of review*

In reviewing an order for summary judgment, we engage in the same inquiry as the trial court. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). Summary judgment is properly granted when there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "In ruling on a motion for summary judgment, the court must consider the material evidence and all reasonable inferences therefrom most favorably for the nonmoving party." *Jacobsen v. State*, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977). Summary judgment is appropriate "only if, from all the evidence, a reasonable person could reach only one conclusion." *Folsom*, 135 Wn.2d at 663.

CR 56(e) explicitly requires that affidavits supporting or opposing a motion for summary judgment "(1) must be made on personal knowledge, (2) shall set forth such *facts* as would be admissible in evidence, and (3) shall show affirmatively that the affiant is competent to testify to the matters stated therein." *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 359, 753 P.2d 517 (1988) (emphasis added). A party opposing a

8

motion for summary judgment, "may not rest upon the mere allegations or denials of his pleading," but "must set forth specific facts showing that there is a genuine issue for trial." CR 56(e).

Mr. Hvolboll's first assignment of error—that the defense of implied reasonable assumption of the risk is not available in cases involving falls on snow or ice—presents an issue of law that we review de novo. *See State v. Kurtz*, 178 Wn.2d 466, 469, 309 P.3d 472 (2013) (availability of medical necessity defense); *State v. Fry*, 168 Wn.2d 1, 11, 228 P.3d 1 (2010) (availability of compassionate use defense).

Assuming the defense is legally available, his second assignment of error contends that two facts on which the defense depends—that Mr. Hvolboll voluntarily encountered the icy condition that caused him to fall, and that he had knowledge of the presence and nature of a specific risk—are genuinely disputed. Because these are questions of fact, they may be determined as a matter of law only if reasonable minds could not differ. *Hartley v. State*, 103 Wn.2d 768, 775, 698 P.2d 77 (1985).

We address Mr. Hvolboll's assignments of error in turn.

*I.     Implied primary assumption of risk is an available defense*

"[T]he general rubric 'assumption of risk' has not signified a single doctrine but rather has been applied to a cluster of different concepts." *Kirk v. Wash. State Univ.*, 109 Wn.2d 448, 453, 746 P.2d 285 (1987). It includes some "kinds of assumption of risk . . . that shift the defendant's duty to the plaintiff and hence bar the [plaintiff's] claim," and

other kinds that are "essentially contributory negligence and . . . simply reduce damages." *Scott v. Pac. W. Mountain Resort*, 119 Wn.2d 484, 496, 834 P.2d 6 (1992). Before the enactment of comparative negligence and comparative fault statutes, it was not critical that the kinds of assumption of risk be carefully distinguished, because at common law both assumption of the risk and contributory negligence were complete bars to recovery. *Id.*

Washington now recognizes four categories of assumption of risk: "(1) express, (2) implied primary, (3) implied reasonable, and (4) implied unreasonable." 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 9:11, at 398 (4th ed. 2013); *Erie v. White*, 92 Wn. App. 297, 302, 966 P.2d 342 (1998). The last two types, implied reasonable and implied unreasonable assumption of risk, are "nothing but alternative names for contributory negligence." *Home v. N. Kitsap Sch. Dist.*, 92 Wn. App. 709, 719, 965 P.2d 1112 (1998) (citing *Scott*, 119 Wn.2d at 497); *Gregoire v. City of Oak Harbor*, 170 Wn.2d 628, 636, 244 P.3d 924 (2010) (noting that they "apportion a degree of fault to the plaintiff and serve as damage-reducing factors").

Express assumption of risk and implied primary assumption of risk operate the same way, and "arise when a plaintiff has consented to relieve the defendant of a duty— owed by the defendant to the plaintiff—regarding specific known risks." *Gregoire*, 170 Wn.2d at 636; *Kirk*, 109 Wn.2d at 453. The only difference between the two is "the way in which the plaintiff manifests consent." *Home*, 92 Wn. App. at 719. "With express

10

assumption of risk, the plaintiff states in so many words that he or she consents to relieve the defendant of a duty the defendant would otherwise have. With implied primary assumption of risk, the plaintiff engages in other kinds of conduct, from which consent is then implied." *Erie*, 92 Wn. App. at 303; *Kirk*, 109 Wn.2d at 453. The elements of proof of both express and implied primary assumption of risk are the same: "The evidence must show the plaintiff (1) had full subjective understanding (2) of the presence and nature of the specific risk, and (3) voluntarily chose to encounter the risk." *Kirk*, 109 Wn.2d at 453. When express or implied primary assumption of the risk applies, the plaintiff's consent negates any duty the defendant would otherwise have owed to the plaintiff. *Home*, 92 Wn. App. at 719.

Mr. Hvolboll contends that because the Supreme Court in both *Iwai* and *Mucsi* remanded cases involving falls on snow and ice for trial without discussing a potential defense of implied primary assumption of risk, it thereby implicitly held that the defense is not available in such cases. *Iwai* stated, and *Mucsi* restated, that if a plaintiff knew about ice in a parking lot, but the possessor of land could and should nonetheless have anticipated harm, "then section 343A may impose liability." *Iwai*, 129 Wn.2d at 94; *Mucsi*, 144 Wn.2d at 860.

But in *Iwai* and *Mucsi,* the defendants based their motions on a contention that as a matter of law, they had no duty—not that their duty was negated by the plaintiff's knowing, voluntary assumption of risk. The duty-creating exception and the duty-

11

negating defense are not two sides of the same coin—as one would expect, since not only our Supreme Court, but the authors of the *Restatement*, recognize both the exception and defense.

The exception under which a land possessor owes a duty to warn or protect an invitee from a known or obvious danger under section 343A focuses on the land possessor and what he or she should reasonably anticipate. Mr. Hvolboll contends that given the layout of the apartment complex, the shortest and sometimes safest option for tenants to get from one point to another was to cross roadways, with the result that the defendants had "reason to expect that [an] invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." RESTATEMENT (SECOND) OF TORTS § 343A cmt. f (1965). If the exception to section 343A's rule of nonliability applied in this case, it would not be based on the precise situation that Mr. Hvolboll encountered on January 7 and any conscious decision that he made, but more generally on what the defendants could anticipate he and other tenants would do.

These defendants did not move for summary judgment on the basis that they owed no duty, however, so the exception to the rule of nonliability under section 343A does not apply. These defendants moved for summary judgment on the basis that if they *had* a duty, it was negated by Mr. Hvolboll's primary reasonable assumption of the risk.

12

It is no doubt true that in many cases, circumstances that should cause a possessor of land with known and obvious dangers to nonetheless anticipate harm will, at the same time, make the defense of implied reasonable assumption of the risk unavailable. For example, if something can be anticipated to distract an invitee's attention from an otherwise obvious and avoidable danger, not only will the possessor of land continue to owe a duty under the exception to section 343A's rule of nonliability, but an invitee who encounters harm may well do so because of the distraction, not on the basis of a knowing and voluntary choice. But as the comments to the *Restatement* recognize, "[t]he boundaries of the defendant's duty to act do not . . . coincide in all cases with those of the plaintiff's assumption of risk":

> The duty is determined upon the basis of what the defendant should expect, while assumption of risk is a matter of what the plaintiff knows, understands, and is willing to accept. Thus one who supplies a defective chattel for the use of another may be under a duty to make it safe, to warn the other of the defect, or otherwise to protect him, because it may be expected that he will not discover the defect. When the other does discover it, and nevertheless proceeds quite voluntarily to make use of the chattel, he assumes the risk.

RESTATEMENT (SECOND) OF TORTS § 496C cmt. e (1965).

Because the boundaries of a defendant's duty do not coincide in all cases with the defense of implied primary assumption of the risk, the defense is available in cases involving an invitee's fall on snow or ice. The defense simply was not the basis for the motions made in *Iwai* and *Mucsi*, and for that reason was not addressed.

13

No. 31836-2-III
*Hvolboll v. Wolff Co.*

> *II.    Summary judgment was appropriate in light of the undisputed evidence of Mr. Hvolboll's contemporaneous knowledge and voluntary choice*

We turn, then, to the contention that even if implied primary assumption of risk applies, material issues of fact exist as to whether Mr. Hvolboll understood the risks and voluntarily assumed them.  To establish their defense of primary reasonable assumption of risk, the defendants must show that at the time of the accident, Mr. Hvolboll "(1) had full subjective understanding (2) of the presence and nature of the specific risk, and (3) voluntarily chose to encounter the risk." *Jessee v. City Council of Dayton*, 173 Wn. App. 410, 414, 293 P.3d 1290 (2013) (quoting *Kirk*, 109 Wn.2d at 453).

The knowledge and voluntariness that establish the plaintiff's consent are questions of fact for the jury, "except when the evidence is such that reasonable minds could not differ." *Alston v. Blythe*, 88 Wn. App. 26, 33-34, 943 P.2d 692 (1997); *Home*, 92 Wn. App. at 720.  Thus, "[i]f reasonable minds could not differ on the knowledge and voluntariness, there is implied primary assumption of the risk as a matter of law." *Jessee*, 173 Wn. App. at 414.

The test for knowledge is a subjective one, but the facts that should be known are objectively determined: a plaintiff has knowledge if, "at the time of decision, [he or she] *actually and subjectively* knew . . . all facts that a reasonable person in the plaintiff's shoes would want to know and consider." *Home*, 92 Wn. App. at 720. Additionally, plaintiffs "must be aware of more than just the generalized risk of their activities; there

14

must be proof they knew of and appreciated the specific hazard which caused the injury." *Shorter v. Drury*, 103 Wn.2d 645, 657, 695 P.2d 116 (1985).

"Whether a plaintiff decides *voluntarily* to encounter a risk depends on whether he or she elects to encounter it despite knowing of a reasonable alternative course of action." *Home*, 92 Wn. App. at 721; *Zook v. Baier*, 9 Wn. App. 708, 716, 514 P.2d 923 (1973) ("[T]he injured plaintiff must have had a reasonable opportunity to act differently or proceed on an alternate course that would have avoided the danger.").

The fact that a plaintiff has commented on the risk before encountering it is compelling evidence of a knowing and voluntary assumption of the risk. In *Jessee*, 173 Wn. App. at 412, the plaintiff tripped and fell on an old firehouse stairway after commenting on the fact that it had no handrail, its steps seemed taller than normal, it appeared not to be "ADA compliant,"[1] and that the stairway looked "unsafe." This court reasoned that the plaintiff's "comment[s] on the specific shortcomings of the stairway before encountering the risk those shortcomings posed" established both that she "had specific knowledge of the risks inherent in descending these cement stairs," and that she voluntarily assumed the risk. *Id.* at 412, 415.

Here, Mr. Hvolboll's complaint alleged that,

[i]n the weeks prior to this incident Plaintiff, his roommate and other residents at the Apartments had complained to employees at the

---

[1] Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12213.

management office about the lack of proper maintenance of the common walkways which they were forced to use in order to get to and from their respective apartments.

CP at 14.

Mr. Hvolboll testified that he had discussed with an apartment manager or contractor "about the area by the dumpster being impassible and unusable, and talked to him about the mailbox area being also dangerous at the same time." CP at 99. He was on his way to the apartment office to speak with the manager about the conditions on the roadways when he fell. He admits that before stepping on the ice and falling, he contemplated which path to take and decided that all possible routes were equally slippery.

Mr. Hvolboll nonetheless contends that while he might have assumed the risk of slippery ice and snow *as he had experienced it up until then*, there is a fact question as to whether he "understood the nature of the condition *that day*." Reply Br. at 6 (emphasis added). He argues that the warming weather and melting ice made the conditions at the time of his fall "much more slippery," Br. of Appellant at 4, and characterizes the specific conditions on the day of his fall as "unique to me." CP at 130.

His argument greatly overstates the acuity with which risks must be appreciated in order to be assumed. As explained in *Simpson v. May*, 5 Wn. App. 214, 218, 486 P.2d 336 (1971) (quoting *Hogenson v. Service Armament Co.*, 77 Wn.2d 209, 215, 461 P.2d 311 (1969)), "the defense requires more than a generalized feeling that there may be

*some* hazard involved." (Emphasis added). But the required knowledge is of a particular *type* of hazard, not knowledge of every variable that might affect the likelihood of harm. As *Simpson* explains:

> To illustrate, one who attends a baseball game may be precluded from recovering for damages suffered when hit by a ball or broken bat. This preclusion may apply even if the circumstances leading to the injury were somewhat bizarre. He would not be precluded from recovering for damages from a collapsing grandstand or from eating tainted concession food unless he knew of this specific risk and voluntarily accepted these risks.

(Internal quotation marks omitted).

Mr. Hvolboll cites two cases in arguing that the defense requires the plaintiff's complete understanding of the likelihood of harm: the cases of *Dorr v. Big Creek Wood Production, Inc.*,[2] and *Alston, supra*, as discussed in *Home*, 92 Wn. App. at 722. But the cases undercut his position. In the first, *Dorr*, the plaintiff—a logger—walked toward another logger's position, looking for any "widow-makers" (a broken limb or tree top caught in the forest canopy) that might loom above. He didn't see any—but then was struck by a falling limb that he had not seen. He was held not to have assumed the risk. It was not because the logger saw a "widow-maker" unlike any he had seen before; it was because he never saw the "widow-maker" at all.

---

[2] 84 Wn. App. 420, 927 P.2d 1148 (1996).

The plaintiff in *Alston*, a pedestrian, was waved across an intersection on a multi-lane road by the driver of a truck who stopped to let her pass; she was then struck by a car in an outside lane that she had been unable to see. It was because she did not see *any* car coming that she lacked knowledge of the hazard. Here again, there was no suggestion that to assume the risk, she would have to have known all facts about that car or that driver that might make them more or less dangerous. *See also Shorter v. Drury*, 103 Wn.2d 645, 695 P.2d 116 (1985) (holding that the risk of dying from bleeding if a blood transfusion is refused was the specific risk that was voluntarily assumed, not any more particularized assessment of the impending medical procedure).

For a winter weather-related hazard, the chance is remote that a plaintiff will have had past experience with exactly the same conditions. The proverbial hundreds of Intuit words for snow come to mind.[3] If knowledge of the hazard presented by snow and ice required prior experience with exactly the same conditions, the exception to the rule of nonliability would swallow the rule.

We call the affirmative defense "assumption of *risk*" because the plaintiff has elected to encounter a possibility of harm that he or she cannot reliably assess in advance.

---

[3] *See* David Robson, *"There really are 50 Eskimo words for 'snow,'"* THE WASHINGTON POST, January 14, 2013, http://www.washingtonpost.com/national/health-science/there-really-are-50-eskimo-words-for-snow/2013/01/14/e0e3f4e0-59a0-11e2-beee-6e38f5215402_story.html (last visited Feb. 3, 2015) (observing that "[f]or many of these dialects, the vocabulary associated with sea ice is even richer").

The generally recognized risk faced in walking on snow or ice is the risk of slipping and falling. Mr. Hvolboll had crossed the snow and ice berm near the mailbox area before and he knew that it was slippery. While changing conditions might increase or decrease the likelihood of a fall, their variability did not prevent him from appreciating the risk of walking across an icy berm on which he had slipped in the past. No reasonable jury could have found that Mr. Hvolboll lacked knowledge of the risk, given the concerns and complaints he had expressed in the recent past.

The evidence also shows that Mr. Hvolboll voluntarily assumed the risk. A plaintiff voluntarily encounters a risk if he or she "elects to encounter it despite knowing of a reasonable alternative course of action." *Egan v. Cauble*, 92 Wn. App. 372, 379, 966 P.2d 362 (1998). The factors considered in determining the existence of a reasonable alternative include "the importance of the interest, right, or privilege which the plaintiff is seeking to advance or protect, the probability and gravity of each of the alternative risks, the difficulty or inconvenience of one course of conduct as compared with the other, and all other relevant factors which would affect the decision of a reasonable man under the circumstances." RESTATEMENT (SECOND) OF TORTS § 496E cmt. d (1965).

Mr. Hvolboll argues that there were no reasonably safe alternatives, contending that each path to the property management office required that he walk across the icy roadway. We note that he offers only his own conclusory, and ultimately speculative assessment that there were no reasonably safe alternatives. Only Mr. Hvolboll's belief

19

was offered, without any foundation establishing how he knows that all alternative routes were unsafe.

He also argues, "[I] needed to get to the office," Br. of Appellant at 16, and rhetorically asks, "Was [I] required as a matter of law to not go [to] the office? To stay huddled in [my] apartment 'til Spring?" *Id.* at 17. Yet as the defendants point out, the undisputed evidence establishes that Mr. Hvolboll did have options: he "could have returned to his apartment to use the phone to call the property office, or he could have driven to the office, or waited until the conditions were addressed or changed before choosing to encounter them." Br. of Resp't at 18. It is not unusual for people to avoid hazardous winter road and sidewalk conditions until they abate.

Most importantly, "[a] plaintiff's actions are voluntary if [he] voices concern about a risk, but ultimately accepts the risk." *Jessee*, 173 Wn. App. at 415. Words or conduct can make it clear that a person refuses to accept a risk, in which case he does not assume it. *Home*, 92 Wn. App. at 721. But

> [t]he plaintiff's mere protest against the risk and demand for its removal or for protection against it will not necessarily and conclusively prevent his subsequent acceptance of the risk, if he then proceeds voluntarily into a situation which exposes him to it. Such conduct normally indicates that he does not stand on his objection, and has in fact consented, although reluctantly, to accept the danger and look for himself.

*Home*, 92 Wn. App. at 721-22 (quoting RESTATEMENT (SECOND) OF TORTS § 496E cmt. a (1965)).

No. 31836-2-III
*Hvolboll v. Wolff Co.*

Given Mr. Hvolboll's prior concerns and complaints and the informed caution with which he nonetheless embarked across the icy berm, the trial court reasonably concluded that as a matter of law, he voluntarily encountered the risk.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Brown, J.

_____
Fearing, J.