# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DANIEL LAMONT, a single man, ) | No. 71465-1-I |
| Appellant, ) | |
| ) | DIVISION ONE |
| v. ) | |
| ) | UNPUBLISHED OPINION |
| DAVID M. SAVIO and BAOYE WU SAVIO, ) husband and wife and the marital community comprised thereof; QUORUM REAL ESTATE PROPERTY MANAGEMENT, INCORPORATED, a Washington corporation; and JANE and JOHN DOE OTHER ENTITES, ) | |
| Respondents. ) | FILED: April 6, 2015 |

APPELWICK, J. — Lamont appeals the summary judgment dismissal of his personal injury suit against his landlords, the Savios and Quorum Real Estate. Lamont was seriously injured after he fell down the stairs of his rented home. He does not demonstrate a prima facie claim that the stairs were the cause in fact of his fall. We affirm.

## FACTS

In 2002, David and Baoye Wu Savio purchased a house in the Magnolia area of Seattle. The Savios lived overseas, so they hired Quorum Real Estate Property Management, Inc. to manage the house as a rental property. The house was built in 1941. There is a carpeted stairway that leads from the main floor to the basement level.

In April 2012, Daniel Lamont met with a broker from Quorum about renting the Magnolia house. Lamont and the broker did a walk-through of the property. Lamont traversed the main stairway at least once during the walk-through. On April 20, 2012, Daniel Lamont executed a lease to rent the Magnolia house.

Lamont moved in at the end of May 2012. He used the basement as a work area for his photography business. Lamont used the staircase "fairly frequently" to access the photography equipment and laundry area in the basement. Lamont noticed that the stairs were somewhat steep and narrow, and he described them as "a little funky."

On August 3, Lamont went to walk downstairs to work on a project. He took one step down the stairs and, as he proceeded to take a second step, he "had no footing. I was just in the air. I had this incredibly eerie sense of pitching head over heels through the air." This was the last thing Lamont remembered. He lay unconscious at the bottom of the stairs for one and a half to two hours. When he awoke, he drove himself to the emergency room. He suffered a concussion and several fractures to his arm and skull. He subsequently suffered headaches, dizziness, memory loss, fatigue, and problems concentrating and focusing.

On January 29, 2013, Lamont sued the Savios and Quorum, alleging breach of the rental agreement, violations of the Residential Landlord Tenant Act of 1973, ch. 59.18 RCW, negligence and nuisance, and breach of the implied warranty of habitability. On August 30, the Savios and Quorum moved for summary judgment. They argued that there was no evidence to support any of Lamont's claims. The trial court concluded that the defendants did not owe a duty to Lamont. It granted the defendants' motion and dismissed Lamont's suit on December 18, 2013.

Lamont appeals.

## DISCUSSION

We review summary judgment orders de novo. Hadley v. Maxwell, 144 Wn.2d 306, 310, 27 P.3d 600 (2001). Summary judgment is appropriate only where there are

2

no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Peterson v. Groves, 111 Wn. App. 306, 310, 44 P.3d 894 (2002). When considering the evidence, we draw reasonable inferences in the light most favorable to the nonmoving party. Schaaf v. Highfield, 127 Wn.2d 17, 21, 896 P.2d 665 (1995). If a plaintiff fails to make a showing sufficient to establish the existence of an element essential to that party's case, summary judgment is appropriate. Hiatt v. Walker Chevrolet Co., 120 Wn.2d 57, 66, 837 P.2d 618 (1992). We may affirm on any basis supported by the record. State v. Norlin, 134 Wn.2d 570, 582, 951 P.2d 1131 (1998).

"The mere occurrence of an accident and an injury does not necessarily lead to an inference of negligence." Marshall v. Bally's Pacwest, Inc., 94 Wn. App. 372, 377-78, 972 P.2d 475 (1999). To prove actionable negligence, a plaintiff must establish the existence of (1) a duty owed by the defendant to the plaintiff to conform to a certain standard of conduct; (2) a breach of that duty; (3) a resulting injury; and (4) proximate cause between the breach and the injury. Cameron v. Murray, 151 Wn. App. 646, 651, 214 P.3d 150 (2009).

Proximate cause has two elements: cause in fact and legal causation. Daugert v. Pappas, 104 Wn.2d 254, 257, 704 P.2d 600 (1985). Cause in fact is ordinarily a question for the jury. Baughn v. Honda Motor Co., Ltd., 107 Wn.2d 127, 142, 727 P.2d 655 (1986). However, when the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of option, factual causation may become a question of law for the court. Id. The court will decide the question of factual causation as a matter of law only if the causal connection is so speculative and indirect that

3

reasonable minds could not differ. Moore v. Hagge, 158 Wn. App. 137, 148, 241 P.3d 787 (2010).

Circumstantial evidence is sufficient to establish a prima facie case of negligence if a reasonable person could conclude that there is a greater probability than not that the conduct relied upon was the proximate cause of the injury. Hernandez v. W. Farmers Ass'n, 76 Wn.2d 422, 425-26, 456 P.2d 1020 (1969). The nonmoving party may not rely on mere speculation or argumentative assertions that unresolved factual issues remain. Marshall, 94 Wn. App. at 377. A cause of action may be said to be speculative when, from a consideration of all of the facts, it is as likely that it happened from one cause as another. Rasmussen v. Bendotti, 107 Wn. App. 947, 959, 29 P.3d 56 (2001).

Here, the evidence before the trial court regarding Lamont's fall consisted of two expert declarations and Lamont's deposition. Lamont submitted declarations from Joellen Gill, a human factors and certified safety professional, and Dr. Toby Hayes, Ph.D., a biomechanics and bioengineering expert. The declarations established that the first step of the subject staircase had a run of 10 inches and the second had a run of 8 ¾ inches. The first step had a rise of 7 ¼ inches and the second had a rise of 8 inches. This showed that the first step complied with current Seattle Building Code requirements, but the second step did not. See SEATTLE MUNICIPAL CODE 22.206.130(A)(1) ("All stairs . . . shall have a minimum run of 10 inches and a maximum rise of 7 ¾ inches.").

Gill opined that the second stair's lack of compliance created an unreasonable hazard and put Lamont at risk for stairway falls. She explained that excessively steep steps such as these can cause a person to roll or slip off the edge of a noncompliant stair:

The reason such a stairway design is particularly hazardous is because of the propensity to overstep the target tread when descending. That is, because the riser heights are taller than permitted, the tendency is for our leading foot to strike the target tread with greater speed and force and also to strike the target tread further ahead [and] because the tread depths are more shallow than permitted when the leading foot strikes the target tread it can overhang the front of the tread. If too much of the foot overhangs the tread then the tendency is for the foot to roll or slip off the tread nosing.

Gill stated that this defect caused Lamont to fall as he was stepping from the first to second step. Gill also observed that the stairs were covered in loose carpeting, which exacerbated the tendency for Lamont's foot to roll or slip off the tread nosing

Dr. Hayes's declaration reiterated that Lamont's contact with the defective second step caused his fall:

When Mr. Lamont attempted to place his leading toe near the stair edge and began to shift his body's weight to that foot, the excessively short tread increased the likelihood of overstepping the nosing. Overstepping is known to produce falls due to the foot slipping or rotating over the edge of the tread nosing during weight acceptance or toe-off. In addition, the loose carpeting created an unstable surface on which the ball of his foot was placed.

Dr. Hayes concluded that "when Mr. Lamont stepped onto the short and unstable surface of the stair tread, he lost his balance, resulting in a forward fall."

Accordingly, Lamont's theory of causation depends on his foot hitting the tread of the second stair and that tread's defect causing the fall. But, Lamont's own testimony does not put him on the second step, which the experts say was defective and caused his fall. In his deposition, Lamont repeatedly stated that he made contact with the first stair and then became airborne:

I take - - took a step down the stairs, and I - - and I - - as I proceeded to take another step downstairs, I had this - - I had no footing. I was just in the air. I had this incredibly eerie sense of pitching head over heels through the air.

5

Lamont said that he "was aware of coming in and taking a step down the stairs, and then I was aware of a very, very disconcerting feeling that my feet were above my head and this was not good." Lamont had been up and down the stairs many times before and said, "It didn't seem like anything was happening differently. I just was not able - - I put a foot down to - - and I didn't have footing." Counsel acknowledged that "it sounded like you got a first foot down on the first step but from there there was just air?" Lamont replied, "Yeah. I was just pitching - - that's all I recall is that - - that I started down the stairs and then I was airborne." Lamont did not recall anything further.

To survive summary judgment, Lamont must establish specific and material facts tending to show that it is more probable than not that the defective second step caused him to fall. See Hiatt, 120 Wn.2d at 66; Rasmussen, 107 Wn. App. at 959. But, his deposition testimony does not suggest that he made contact with the second step. If Lamont failed to make contact with the second step, neither loose carpet on the step nor overstepping and slipping off the step—as opined by his experts—could have caused the fall. His testimony does not create an inference that the step's defect was the reason he failed to make contact with it or the reason he fell.

This is analogous to Marshall, where the plaintiff was able to provide only a speculative theory of proximate cause. 94 Wn. App. at 380. Marshall was injured while exercising on a treadmill at her health club. Id. at 375. She alleged that the treadmill started at an unexpectedly high speed and threw her off. Id. However, due to her injury, she did not actually remember how the accident happened. Id. at 375-76. The Court of Appeals found that summary judgment was proper, because "Marshall provides no

evidence that she was thrown from the machine, what caused her to be thrown from the machine, or how she was injured." Id. at 379-80.

Here, Lamont can show that he fell down the stairs and that he was injured by the fall. He can establish at least an inference that one of the steps was defective and that such defects pose a risk of falling. Importantly, however, nothing on this record makes it more likely than not that the second step caused Lamont to fall. The evidence of causation is inadequate to withstand summary judgment.[1]

We need not address the bases upon which Lamont asserts that the defendants owed him a duty. We need not address the defendants' challenge to Lamont's expert declarations.

We affirm.

WE CONCUR:

---

[1] We note that Division Three of this court recently affirmed summary judgment where the plaintiff assumed the risk of injury on a stairway that did not comply with building code, because she appreciated the risk and voluntarily used the stairs. Jessee v. City Council of Dayton, 173 Wn. App. 410, 415-16, 293 P.3d 1290 (2013). However, the parties do not brief this case. We likewise do not address it.