IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MICHAEL SHERLOCK, an individual, | ) | No. 39166-3-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NEW HOPE RECOVERY LLC, a | ) | UNPUBLISHED OPINION |
| domestic corporation, licensed to do and | ) | |
| doing business in the State of Washington; | ) | |
| and Y&M REGAN PROPERTIES LLC, a | ) | |
| domestic corporation, licensed to do and | ) | |
| doing business in the State of Washington, | ) | |
| | ) | |
| Respondents. | ) | |

PENNELL, J. — Michael Sherlock appeals from summary judgment dismissal of his negligence claims against New Hope Recovery LLC (NHR) and Y&M Regan Properties LLC (Y&M). We affirm as to NHR but reverse as to Y&M.

FACTS

This appeal arises from a slip-and-fall negligence suit brought against the owner and tenant of commercial property in Wenatchee, Washington (the Property). The deeded owner of the Property is Y&M. Morris and Yvonne Regan are the sole members and owners of Y&M. NHR, which operates a drug and alcohol outpatient treatment center on the Property, is one of four tenants leasing office space from Y&M. Morris and Yvonne Regan are also the sole members and owners of NHR.

A lease agreement between NHR and Y&M identifies Y&M as the "Landlord" and NHR as the "Tenant." Clerk's Papers (CP) at 77. The lease also identifies Y&M as the owner of the Property. The lease contains a covenant that "Landlord will maintain all building indoor and outdoor maintenance and repairs." *Id*. at 77. The lease is signed by Yvonne Regan as landlord and Morris Regan as tenant.

On the morning of January 3, 2019, the weather in Wenatchee was near freezing with drizzling rain. Around 8:30 a.m., Morris Regan arrived at the Property to spread ice melt on the parking lot and walkways. Soon after, Michael Sherlock arrived at the Property to sign a release form for his treatment at NHR. NHR was expecting him that morning. Mr. Sherlock's wife drove him to the appointment and dropped him off at the street. She did not enter the Property's parking lot because Mr. Sherlock saw ice and told her "whoa, don't go up there." *Id*. at 251. Mr. Sherlock got out of the car and walked diagonally up the parking lot, in an attempt to avoid the ice.

After signing the documents, Mr. Sherlock left the building and headed back out toward the street to wait for his wife. He again noticed ice and "took it very carefully." *Id*. Mr. Sherlock made it part way down to the street and then slipped and fell. He lost consciousness and emergency medical services were called. Morris Regan asked the responding paramedics if they would like him to spread additional ice melt on the parking

lot and they accepted his offer. Mr. Sherlock's wife arrived and drove him to the hospital. Mr. Sherlock was later flown to Harborview Medical Center in Seattle.

Mr. Sherlock subsequently filed a negligence action in Chelan County Superior Court against NHR and Y&M. The complaint asserted that the named defendants were the owners of the Property, that they owed a duty to Mr. Sherlock to maintain the common areas of the Property, and that they breached this duty, causing Mr. Sherlock physical and financial injury. NHR and Y&M retained separate counsel and filed answers to the complaint, each entity admitting they owned the Property.

In March 2022, NHR moved for summary judgment. In its motion, NHR described itself as a "tenant" at the Property. *Id*. at 23. The lease was made a part of the submissions in support of the motion. NHR further explained the lease contractually bound Y&M to assume sole responsibility for repairing and maintaining the exterior of the Property. NHR argued it had no duty to Mr. Sherlock to remove snow and ice because the lease expressly assigned that duty to Y&M. Regardless of the contractual duty, NHR also asserted Y&M owed a duty to maintain the Property's common areas as the possessor of the land.

In support of its motion for summary judgment, NHR submitted declarations by Morris Regan and NHR's office manager, Brianna Boltman. The declarations explained

the Property was owned by Y&M with NHR as a tenant. The lease agreement between

Y&M and NHR obliged Y&M to provide outdoor maintenance and repairs and,

consistent with this obligation, Morris Regan applied ice melt to the parking lot and

walkways of the property on the morning of Mr. Sherlock's fall. The declarations also

stated Morris Regan was acting in his capacity as landlord while applying the ice melt,

and he applied the ice melt before Mr. Sherlock's arrival. Both Morris Regan and Ms.

Boltman declared that, previous to Mr. Sherlock's fall, they were not aware of anyone

else ever falling due to icy conditions at the Property.

Counsel for NHR also filed a declaration in support of summary judgment.

Counsel explained that in preparing the answer to Mr. Sherlock's complaint, he failed to

search the real property records and mistakenly believed NHR owned the Property.

Counsel further explained that according to Chelan County real property records, NHR

had never had an ownership interest in the Property.

The trial court granted NHR's motion for summary judgment, finding ownership

of the Property was not disputed and the responsibility for outdoor maintenance belonged

solely to Y&M.

Soon after, Y&M filed a motion for summary judgment, arguing Mr. Sherlock's

case should be dismissed under section 343A of *Restatement (Second) of Torts* (Am. Law

Inst. 1965) and the doctrine of implied primary assumption of the risk. The trial court

granted Y&M's motion.

Mr. Sherlock timely appeals from both summary judgment orders.

ANALYSIS

The purpose of summary judgment is to avoid useless trials where there are no

genuine disputes as to material fact. *Preston v. Duncan*, 55 Wn.2d 678, 681, 349 P.2d 604

(1960). We review summary judgment orders de novo, construing the evidence in the

light most favorable to the nonmoving party. *Folsom v. Burger King*, 135 Wn.2d 658,

663, 958 P.2d 301 (1998). Because this case involves two different summary judgment

orders, we address each in turn.

*Summary judgment as to NHR*

Mr. Sherlock makes four claims regarding the propriety of summary judgment

as to NHR. First, he claims there are genuine issues of material fact as to whether NHR

or Y&M owns the Property. Second, even if Y&M is sole owner of the Property,

Mr. Sherlock avers there are questions of fact as to whether the lease agreement assigns

deicing responsibility to NHR or Y&M. Third, Mr. Sherlock contends there are issues of

fact regarding the validity of the lease. And fourth, Mr. Sherlock claims there are issues

of material fact regarding whether NHR was engaged in deicing responsibilities,

regardless of the terms of the lease. We disagree with each of these claims and address them in turn.

### 1. Ownership of the Property

Mr. Sherlock's first argument against summary judgment is that there are genuine issues of material fact regarding ownership of the Property. This is based on his claim that NHR's admission of ownership, contained in its answer to the complaint, created an issue of fact as to ownership. Because NHR's initial admission conflicted with later evidence showing NHR did not own the Property, Mr. Sherlock argues summary judgment was improper.

The problem with Mr. Sherlock's argument is that a formal concession in a pleading is not evidence. Rather, a concession can constitute a judicial admission that has "the effect of withdrawing a fact from issue and dispensing wholly with the need for proof." 2 MCCORMICK ON EVIDENCE § 254, 181 (Kenneth S. Broun ed., 6th ed. 2006). But a concession is not a judicial admission if it was made by mistake. *See Oregon Ry. & Navigation Co. v. Dacres*, 1 Wash. 195, 201, 23 P. 415 (1890).

It is undisputed counsel for NHR was mistaken when he stated in the answer to the complaint that NHR owned the Property. Given this circumstance, the trial court properly considered NHR's admission withdrawn. Without the existence of a judicial admission,

the question of ownership was open to competing evidence. NHR submitted uncontested

evidence that it did not own the Property. No purpose would be served by allowing the

issue of ownership to go to trial. NHR is entitled to summary judgment as to ownership.

### 2. Maintenance responsibility under the lease

Regardless of NHR's ownership of the Property, Mr. Sherlock next argues there

are questions of material fact regarding whether the lease between NHR and Y&M

assigned deicing responsibilities to the landlord, the tenant, or both. As previously stated,

the applicable portion of the lease states as follows: "Building Maintenance. Landlord

will maintain all building indoor and outdoor maintenance and repairs." CP at 77.

There are no issues of fact regarding who has responsibility for outdoor

maintenance under the terms of the lease. The plain language of the agreement clearly

assigns this responsibility to the landlord. Furthermore, Morris Regan has filed an

uncontested declaration explaining he interpreted this provision of the lease to mean

Y&M assumed sole responsibility for outdoor maintenance. We therefore disagree with

Mr. Sherlock that trial is warranted to determine which defendant had deicing

responsibilities under the terms of the lease.

*3. Validity of the lease*

Third, Mr. Sherlock contends there are questions of material fact regarding the validity of the lease because the Regans may not have had authority to sign on behalf of their respective corporations. This challenge was not raised in the trial court. While the parties included copies of the lease with their summary judgment materials, Mr. Sherlock never suggested during those proceedings that the lease was invalid. Thus, NHR never had cause to submit any documentation verifying the Regans were not acting outside the scope of their authority when they signed the lease. Mr. Sherlock's speculation raised for the first time on appeal, that the Regans may have improperly entered into the lease on behalf of NHR and Y&M, is not sufficient to create a genuine issue of material fact for trial. *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 602, 200 P.3d 695 (2009).[1]

*4. Nature of Morris Regan's actions in spreading ice melt*

Finally, Mr. Sherlock appears to argue there are issues of material fact regarding whether Morris Regan was acting on behalf of NHR or Y&M when he applied ice melt on the morning of Mr. Sherlock's fall. To the extent this argument has been made, it fails. Mr. Regan has submitted an uncontested declaration stating he was acting on behalf of

---

[1] Given our disposition of this issue, no action is necessary on NHR's motion to supplement the record to include proof that the Regans indeed had authority to sign the lease agreement on behalf of the corporations.

8

Y&M, as contemplated by the lease, when he applied ice melt to the parking lot and walkways. There is no material issue of fact for trial.

*Summary judgment as to Y&M*

Mr. Sherlock argues this court's recent decision in *Little v. Rosauers Supermarkets, Inc.*, 24 Wn. App. 2d 898, 521 P.3d 298 (2022), renders summary judgment improper on the basis of Y&M's assertion of implied primary assumption of the risk. We agree.

The defense of implied primary assumption of the risk can shield land possessors from liability to invitees for injuries caused by obviously dangerous conditions on the land. However, the defense does not apply if the possessor should anticipate harm to an invitee despite the obviousness of the danger. *Id.* at 903. To be entitled to the defense of implied primary assumption of the risk, the land possessor needs to prove both (1) the invitee had a full subjective understanding of the risk and voluntarily chose to encounter it, and (2) this was not a situation where the land possessor could and should have anticipated harm despite the invitee's knowledge and the obviousness of the danger. *Id*.

Y&M has not satisfied its burden of proof as to the second element. Y&M knew Mr. Sherlock would be visiting NHR on the day of the incident, despite the presence of ice. The path chosen by Mr. Sherlock to enter and exit the building was not highly

unusual. While it was different from what might be used by someone arriving at the

building by vehicle and parking in the upper parking lot, it was similar to one that might

be used by a patron traveling by foot or bus.[2] Furthermore, Morris Regan claims he

placed ice melt down on the "walkway" where Mr. Sherlock ultimately fell. CP at 33.

This preventive measure suggests Y&M anticipated pedestrians might traverse the area

in question.

If anything, given the nature of NHR's business, Y&M should be on heightened

notice that patrons would be willing to undergo certain risks in order to access the

Property. Substance abuse treatment is a critical healthcare service that is needed on a

daily basis, regardless of weather conditions. Many consumers of substance abuse

treatment are under court order and face jail time or other sanctions if they fail to show

for appointments. Thus, unlike a retail customer buying groceries, as was at issue in

*Little*, Y&M can and should expect patrons will not be easily deterred from accessing the

Property, despite obvious dangers presented by snow and/or ice.

This case is unlike *Hvolboll v. Wolff Co.*, 187 Wn. App. 37, 48-49, 347 P.3d 476

(2015), where an invitee's unusual conduct entitled the land possessor to summary

---

[2] During a deposition, Mr. Sherlock testified that someone was sitting on the curb of the street outside of the facility, and Mr. Sherlock thought this person "said he was waiting for a bus." CP at 255-56.

judgment on implied primary assumption of the risk. In *Hvolboll*, the invitee chose

to walk across an icy snow berm instead of using a sidewalk that had been cleared of

snow. *Id*. at 42. There was not any evidence in *Hvolboll* suggesting the land possessor

might have expected invitees to traverse snow berms instead of designated sidewalks.

As a result, there were no genuine issues of material fact in *Hvolboll* precluding summary

judgment as to implied primary assumption of the risk.

Y&M contends that regardless of implied primary assumption of the risk, it is

entitled to summary judgment on the alternative issues of proximate cause or breach.[3]

We disagree. With respect to breach, there is competing evidence regarding whether

and to what extent Y&M deposited ice melt at the location of Mr. Sherlock's fall. As

for proximate cause, Mr. Sherlock has submitted sworn statements that he fell after

slipping on ice. Although there is some suggestion Mr. Sherlock may have had a heart

condition that contributed to his fall, there is no evidence that this was the sole cause.[4]

---

[3] The elements of a negligence claim are: "(1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause." *Coleman v. Hoffman*, 115 Wn. App. 853, 858, 64 P.3d 65 (2003).

[4] The only evidence referenced by Y&M is a notation in Mr. Sherlock's medical records stating the treating physician was "[c]oncerned that [Mr. Sherlock's] conduction abnormalities *could have possibly* led to his initial presenting fall." CP at 137 (emphasis added). This is hardly conclusive proof.

No. 39166-3-III
*Sherlock v. New Hope Recovery LLC*

While Mr. Sherlock may not remember all the specifics of how or why he fell, the record is sufficient to allow the question of causation to go to the jury.

CONCLUSION

The order granting summary judgment to NHR is affirmed. The order granting summary judgment as to Y&M is reversed. This matter is remanded for further proceedings.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Pennell, J.

WE CONCUR:

Staab, J.

Siddoway, J.P.T.[5]

---

[5] Judge Laurel H. Siddoway was a member of the Court of Appeals at the time argument was held on this matter. She is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.