# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| LEO TIMOTHY GLEASON | No. 46398-9-II |
| Appellant, | |
| v. | |
| BRIAN COHEN and LIZA COHEN, husband and wife, and the marital community composed thereof, | PUBLISHED OPINION |
| Respondent. | |

MAXA, J. —Leo Timothy Gleason was injured by a falling tree while helping Brian Cohen cut down trees on Cohen's property. The trial court granted Cohen's motion for summary judgment, ruling that Gleason's claim was barred by the doctrine of "implied primary" assumption of risk because he was aware of the risk that the particular tree he was cutting down could fall on him. Gleason appeals, arguing that the trial court improperly applied implied primary assumption of risk to bar his claim. Gleason argues that "implied unreasonable" assumption of risk, which does not operate as a complete bar to recovery, applies because the negligence of Cohen and workers he hired increased the risk of Gleason being injured by a falling tree.

We hold that the doctrine of implied primary assumption of risk may not be applicable under the facts of this case because there is a question of fact whether Gleason was injured by the negligence of Cohen and his workers rather than by a risk inherent in cutting down trees. If Gleason establishes such negligence, implied unreasonable assumption of risk applies, which

would reduce Gleason's recovery but not bar his claim. Therefore, we reverse the trial court's grant of summary judgment in favor of Cohen and remand for proceedings consistent with this opinion.

FACTS

Gleason was injured while cutting down a tree on property owned by Brian and Liza Cohen. Gleason was not a professional logger, but he had extensive experience cutting down trees and had been exposed to tree-cutting his whole life. He previously had worked cutting down dangerous trees and trees over houses using chokers and chainsaws. Gleason testified that being around logging as much as he was, he knew cutting down trees was dangerous and that he was always hearing about people getting hurt.

Gleason posted an ad selling firewood. Cohen saw the ad and offered to trade trees that were on Cohen's property for Gleason's firewood. Gleason agreed.[1]

Cohen had two men working on the property cutting down trees when Gleason and three friends he had recruited arrived. Gleason expected their job would be only to load downed trees onto Gleason's trailer and transport them to a mill. Gleason, his friends, and Cohen's workers began stacking the already cut trees onto Gleason's trailer. After the wood was stacked on the trailer, Cohen asked if Gleason could help cut down a few more trees. Cohen and Gleason came to an understanding that Cohen would pay Gleason $100 for each tree that he cut down as

---

[1] Gleason and Cohen provide different accounts of the events and circumstances that transpired on the day Gleason was hurt. Because this is an appeal from a summary judgment order against Gleason, we view the facts in the light most favorable to Gleason. *Wirtz v. Gillogly*, 152 Wn. App. 1, 7, 216 P.2d 416 (2009). Therefore, the facts recited in this opinion primarily come from Gleason's testimony and the testimony of his witness.

payment for gas money to get home or to the mill. Cohen walked Gleason around the property, pointing out which trees he wanted removed.

Gleason did not want to cut down the tree that ended up falling on him. He did not feel safe cutting down that tree because of its proximity to Cohen's house, Cohen's car, and other obstacles. Gleason also believed that Cohen's workers had placed the choker improperly on the tree, and asked them to adjust the choker. Cohen's workers told him the choker was hooked up correctly and that he would be safe. Gleason told Cohen that he did not want to cut this tree down because he was tired, he knew the tree was unsafe, and it was raining. But Gleason testified that he agreed to cut the tree down because Cohen refused to pay him for any of the work that day unless the tree was cut down.

Gleason testified that he face cut the tree that eventually struck him, as is the normal practice when cutting down trees. Cohen's workers applied pressure on the tree using the choker and winch. Gleason positioned himself at the base on the other side of the tree, away from where Cohen's workers were pulling and away from where the tree was going to fall. As Gleason cut the tree from the back side, the tree slid off the stump and hung up in the branches of some nearby trees. Cohen's workers pushed on the tree, trying to dislodge it from the other branches. During this time, Gleason remained on the backside of the tree near the base.

At this point, something went wrong and Gleason yelled for everyone to run. Gleason left his position at the base of the tree as well, but cannot remember where or why he ran. The falling tree struck and seriously injured Gleason. Gleason believes Cohen's workers placed the choker improperly on the tree, which caused it to fall the way it did.

3

Gleason filed a lawsuit against Cohen. Cohen filed a summary judgment motion regarding liability. The superior court granted summary judgment in favor of Cohen, ruling that Gleason was barred from recovery because Gleason assumed the risk of injury. Gleason appeals.

ANALYSIS

This case involves the distinction between implied primary assumption of risk, which operates as a complete bar to recovery, and implied unreasonable assumption of risk, which is subsumed into contributory negligence and merely reduces the plaintiff's recoverable damages based on comparative fault.

Here, implied primary assumption of risk applies to Gleason's knowing encounter of the risks inherent in the activity of cutting down large trees. However, implied primary assumption of risk does not apply to Gleason's knowing encounter of risks not inherent in that activity and created by Cohen – Cohen's alleged negligence in selecting the trees to be cut down and the alleged negligence of Cohen's workers in placing choker chains on the tree that injured Gleason. *That* conduct involves implied unreasonable assumption of risk, which may reduce but does not bar Gleason's recovery.

A.    STANDARD OF REVIEW

We review a trial court's order granting summary judgment de novo. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). We view the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Keck*, 184 Wn.2d at 370.

4

B.      ASSUMPTION OF THE RISK

At common law, both assumption of risk and contributory negligence operated as total bars to recovery. *Scott v. Pac. W. Mountain Resort*, 119 Wn.2d 484, 496, 834 P.2d 6 (1992). In 1973, the legislature first adopted comparative negligence for tort claims. Former RCW 4.22.010. In 1981, the legislature replaced the comparative negligence statute with the current contributory fault scheme to apportion damages between a negligent plaintiff and a negligent defendant. *See* RCW 4.22.005. Under RCW 4.22.005, a plaintiff's contributory negligence reduces recoverable damages but does not bar recovery. RCW 4.22.015 defines "fault" to include "unreasonable assumption of risk."

Washington law recognizes four categories of the assumption of risk doctrine: (1) express, (2) implied primary, (3) implied unreasonable, and (4) implied reasonable. *Gregoire v. City of Oak Harbor*, 170 Wn.2d 628, 636, 244 P.3d 924 (2010). The first two categories of assumption of risk – express and implied primary – continue to operate as a complete bar to a plaintiff's recovery. *See id.*; *Kirk v. Wash. State Univ.*, 109 Wn.2d 448, 453-54, 746 P.2d 285 (1987). On the other hand, implied unreasonable and implied reasonable assumption of risk are subsumed into contributory negligence and merely reduce the plaintiff's recoverable damages based on comparative fault. *See Scott*, 119 Wn.2d at 497.[2]

Courts have struggled to properly distinguish between implied primary assumption of risk, which bars the plaintiff's claim, and implied unreasonable assumption of risk, which simply

---

[2] Because contributory fault subsumes both implied unreasonable and implied reasonable assumption of risk, there is no meaningful difference between these two types of assumption of risk. *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 143-44 n.8, 875 P.2d 621 (1994).

No. 46398-9-II

reduces the plaintiff's damages. *See Barrett v. Lowe's Home Centers, Inc.*, 179 Wn. App 1, 6,

324 P.3d 688 (2013) (acknowledging the difficulty of determining when to apply the two types).

Division One of this court warned long ago that courts must carefully draw the line between

these two types of assumption of risk.

> Trial courts are rightfully wary of requests to instruct the jury on implied primary
> assumption of the risk. That doctrine, if not boxed in and carefully watched, has
> an expansive tendency to reintroduce the complete bar to recovery into territory
> now staked out by statute as the domain of comparative negligence.

*Dorr v. Big Creek Wood Prods., Inc.*, 84 Wn. App. 420, 425-26, 927 P.2d 1148 (1996);

*see also Kirk*, 109 Wn.2d at 455-56 (noting that a rigorous application of implied primary

assumption of risk could undermine the purpose of comparative negligence).

C.    DISTINGUISHING BETWEEN TYPES OF ASSUMPTION OF RISK

    1.    Implied Primary vs. Implied Unreasonable

*Implied primary* assumption of risk is based on the plaintiff's implied agreement that the

defendant owes no duty to the plaintiff regarding certain risks. *Kirk*, 109 Wn.2d at 453.

Specifically, implied primary assumption of risk "arises where a plaintiff has impliedly

consented (often in advance of any negligence by defendant) to relieve defendant of a duty to

plaintiff regarding specific *known* and appreciated risks." *Scott*, 119 Wn.2d at 497. The

plaintiff's consent to relieve the defendant of any duty is implied based on the plaintiff's decision

to engage in an activity that involves those known risks.[3] *See Egan v. Cauble,* 92 Wn. App. 372,

377, 966 P.2d 362 (1998).

---

[3] Express assumption of risk occurs when the plaintiff and the defendant expressly have agreed in
advance of the plaintiff's participation in an activity that the defendant owes no duty to the plaintiff
and therefore that the defendant will not be liable for what otherwise would be negligence. *Scott*,
119 Wn.2d at 496. The basis of both express and implied primary assumption of risk is "the

6

*Implied unreasonable* assumption of risk does not involve a plaintiff's consent to relieve the defendant of a duty. In this type of assumption of risk, the defendant has breached a duty that creates a risk of harm, and the plaintiff chooses to take that risk. Specifically, implied unreasonable assumption of risk "involve[s] the plaintiff's voluntary choice to encounter a risk created by the defendant's negligence." *Scott*, 119 Wn.2d at 497. The Supreme Court in *Scott* quoted with approval the following explanation:

> [I]mplied reasonable and unreasonable assumption of risk arise where the plaintiff is aware of a risk that already has been created by the negligence of the defendant, yet chooses voluntarily to encounter it. In such a case, plaintiff's conduct is not truly consensual, but is a form of contributory negligence, in which the negligence consists of making the wrong choice and voluntarily encountering a known unreasonable risk.

*Id.* at 499 (quoting *Leyendecker v. Cousins*, 53 Wn. App. 769, 774, 770 P.2d 675 (1989)).

Significantly, implied primary assumption of risk is the exception rather than the rule in assumption of risk situations. Implied primary assumption of risk occupies a very "narrow niche." *Dorr*, 84 Wn. App. at 426. "In most situations, a plaintiff who has voluntarily encountered a known specific risk has, at worst, merely failed to use ordinary care for his or her own safety, and an instruction on contributory negligence is all that is necessary and appropriate." *Id.*

2. Voluntarily Encountering a Known Risk Inherent in the Activity

Cohen argues that implied primary assumption of risk applies any time a plaintiff voluntarily encounters a known risk. This argument reflects a misunderstanding of the different types of assumption of risk.

---

plaintiff's consent to the negation of a duty by the defendant with regard to those risks assumed by the plaintiff." *Kirk*, 109 Wn.2d at 453-54.

Cohen is correct that voluntarily choosing to encounter a specific risk is an element of implied primary assumption of risk. *Gregoire*, 170 Wn.2d at 636. However, as noted above, voluntarily choosing to encounter a known risk also is an element of implied unreasonable assumption of risk. *Scott*, 119 Wn.2d at 497. By definition, voluntarily assuming a risk of harm is an essential characteristic of *all* types of assumption of risk. *See* RESTATEMENT (SECOND) OF TORTS § 496A (1965). Therefore, the mere fact that a plaintiff has voluntarily encountered a known risk does not determine whether implied primary assumption of risk applies.

3. Inherent Risks of an Activity

Whether implied primary assumption of risk applies depends upon whether the plaintiff has been injured by an inherent risk of an activity. The Supreme Court in *Scott* made it clear that implied primary assumption of risk means that "the plaintiff assumes the dangers that are *inherent in* and *necessary to*" a particular activity. 119 Wn.2d at 500-01. Since *Scott*, Washington courts repeatedly have identified implied primary assumption of risk with the inherent risks of an activity. *See Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 144, 875 P.2d 621 (1994); *Barrett*, 179 Wn. App. at 6, 8-9; *Lascheid v. City of Kennewick*, 137 Wn. App. 633, 641-42, 154 P.3d 307 (2007); *Taylor v. Baseball Club of Seattle, LP*, 132 Wn. App. 32, 37-39, 130 P.3d 835 (2006); *Dorr*, 84 Wn. App. at 427.

The classic example of implied primary assumption of risk involves participation in sports, where a person knows that the risk of injury is a natural part of such participation.

> One who participates in sports "assumes the risks" which are *inherent in the sport*. To the extent a plaintiff is injured as a result of a risk inherent in the sport, the defendant has no duty and there is no negligence. . . . A defendant simply does not have a duty to protect a sports participant from dangers which are an inherent and normal part of a sport.

8

*Scott*, 119 Wn.2d at 498.

On the other hand, implied primary assumption of risk does not apply if the defendant

engages in negligent acts that increase the inherent risks of an activity.

> While participants in sports are generally held to have impliedly assumed the risks inherent in the sport, *such assumption of risk does not preclude a recovery for negligent acts which unduly enhance such risks*.

*Scott*, 119 Wn.2d at 501 (emphasis added). *See also Barrett*, 179 Wn. App. at 6 (stating that

"[w]hen the defendant's negligent acts increase the risks, then the plaintiff is not assumed to

have consented to those additional risks."). This rule is consistent with the definition of implied

unreasonable assumption of risk: the plaintiff's voluntary choice to encounter a risk *created by*

*the defendant's negligence*. *Scott*, 119 Wn.2d at 497.

Several cases are instructive. In *Kirk*, the plaintiff was injured while practicing as a

member of the Washington State University cheerleading squad. 109 Wn.2d at 449-50. The

Supreme Court held that although implied primary assumption of risk may apply to the specific

risks involved in cheerleading, it did not apply to other risks created by the defendant that were

not inherent in that sport. *Id.* at 454-57. As the court later explained in *Scott*:

> Although the plaintiff in *Kirk* did assume the risks inherent in the sport of cheerleading, she did *not* assume the risks caused by the university's negligent provision of dangerous facilities or improper instruction or supervision. Those were not risks "inherent" in the sport.

119 Wn.2d at 498-99.

In *Scott*, the plaintiff was injured while skiing at a commercial ski resort when he hit an

abandoned shed adjacent to a slalom race course. 119 Wn.2d at 487-88. The Supreme Court

held that although the implied primary assumption of risk applied to the risks inherent in the

sport of skiing, it did not apply to the defendant's negligence in placing a race course dangerously close to the shed. *Id.* at 500-03.

In *Tincani*, the plaintiff was injured at a zoological and botanical preserve when he attempted to climb down a rocky cliff. 124 Wn.2d at 126. The Supreme Court held that implied primary assumption of risk did not apply because the risk of serious injury was not inherent in, and necessary to, visiting a zoo. *Id.* at 144-45. The court stated:

> The jury's verdict indicates that it concluded Tincani voluntarily chose to encounter a risk *created* by the Zoo's negligence. This type of assumption of risk is called 'unreasonable assumption of risk' [which] . . . retains no independent significance from contributory negligence.

*Id.* at 145 (citations omitted).

In *Dorr*, the plaintiff was injured by a falling tree limb when visiting a friend at a remote logging site. 84 Wn. App at 423. The plaintiff was aware of the danger of large limbs that get caught up in standing trees that later fall with little warning, but he continued onto the site after his friend waved him forward. *Id.* Division One of this court held that although implied primary assumption of risk applied to the risks inherent in visiting an active logging site, it did not apply to the defendant's alleged negligence in directing the plaintiff into the hazard. *Id.* at 428-30.

These cases reveal that whether implied primary assumption of risk applies does not depend of whether the plaintiff has voluntarily encountered a known risk. It depends on whether the risk the plaintiff encountered was inherent in the activity in which the plaintiff was engaged. And implied primary assumption of risk does not apply when the plaintiff has knowingly encountered an additional risk that the defendant has created.

D.     ASSUMING RISK OF CUTTING TREES

Here, Gleason agreed to cut certain trees for Cohen.  There is no question that implied primary assumption of risk applies to the dangers inherent in cutting down trees.  If the fact finder determines that a tree simply fell on Gleason in the regular course of his tree cutting activities, any claims against Cohen as the owner of the trees or the owner of the property will be barred.  This court held in *Wirtz v. Gillogly* that cutting down trees is inherently dangerous and subject to implied primary assumption of risk.  152 Wn. App. 1, 8-9, 216 P.3d 416 (2009).

However, Gleason claims that Cohen and his workers engaged in additional conduct that *increased the risk* of being injured while cutting down trees.  Gleason alleges that Cohen was negligent in requesting that he cut down the particular tree that injured him because of its location.  Gleason also alleges that Cohen's workers were negligent in placing the choker chains on the tree that injured him.  Washington law is clear that implied primary assumption of risk does not apply to this additional negligence.  Instead, these facts fall squarely within the definition of implied unreasonable assumption of risk – Gleason made a "voluntary choice to encounter a risk created by the defendant's negligence."  *Scott*, 119 Wn.2d at 497.

Cohen relies on two Division Three cases, *Jessee v. City Council of Dayton*, 173 Wn. App. 410, 293 P.3d 1290 (2013) and *Hvolboll v. Wolff Co.*, 187 Wn. App. 37, 347 P.3d 476 (2015).  In *Jessee*, the court applied implied primary assumption of risk when the plaintiff used an old staircase that she could see was unsafe.  173 Wn. App. at 414-16.  In *Hvolboll*, the court applied implied primary assumption of risk when the plaintiff walked on an icy roadway that had not been cleared by his landlord, knowing that it was dangerous.  187 Wn. App. at 47-49.

No. 46398-9-II

We respectfully disagree with these cases. As in *Tincani*, falling and getting injured is not an inherent risk of walking on stairs or on a roadway. Getting injured was a risk of walking on *those* stairs and *that* roadway, but as in *Scott* the risks were created by the defendants. As a result, the facts of these cases represent classic examples of implied unreasonable assumption of risk – the plaintiffs made a "voluntary choice to encounter a risk created by the defendant's negligence." *Scott*, 119 Wn.2d at 497.

The trial court improperly implied primary assumption of risk as a matter of law under the facts of this case. Gleason's poor choice in continuing to cut down the tree that Cohen selected knowing that it was too dangerous and knowing that the choker chains were set incorrectly potentially involved implied unreasonable assumption of risk, which only reduces but does not bar his claims. The trier of fact must be allowed to determine which type of assumption of risk applies under the evidence presented at trial.

We reverse the trial court's grant of summary judgment in favor of Cohen and remand for proceedings consistent with this opinion.

MAXA, P.J.

We concur:

LEE, J.

SUTTON, J.

12