IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CHASE L. McCLURG, an individual, | ) | No. 40153-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL DAVID WINTERS, and JANE | ) | UNPUBLISHED OPINION |
| DOE WINTERS, husband and wife. | ) | |
| | ) | |
| Appellants. | ) | |

FEARING, J. — Chase McClurg sues Paul Winters as a result of Winters'

car striking her on a city of Walla Walla Street while McClurg rode a longboard, a

newer version of a skateboard. Winters asserted an affirmative defense of

comparative fault because McClurg rode the board in a bicycle lane rather than on

a sidewalk. We reverse the superior court's summary dismissal of the affirmative

defense because a genuine issue of fact exists as to whether the law imposes some

fault on McClurg.

FACTS

On January 24, 2020, just after 6:00 a.m., Paul Winters left work at the

Washington State Penitentiary in Walla Walla and traveled in his car southbound on

North 2nd Avenue, intending to enter State Route 12. North 2nd Avenue consists of two

southbound motor vehicle lanes and one bike lane on the right side of the road. A

sidewalk sits to the right of the bike lane.  *See* Br. of Resp'ts at 6 (colored version of

Clerk's Papers at 67.)   The left motor vehicle lane continues south on North 2nd Avenue.

The right motor vehicle lane transitions into a turn lane and jogs right onto the highway.

At the entrance ramp to the highway, the bike lane runs through the turn lane such that it

separates the on-ramp lane from the left lane.  So, for a driver of a vehicle to enter the on-

ramp, he must drive through the bike lane.

As Paul Winters drove in the right hand lane and headed into the highway exit, he

saw Jeremy Spencer riding a bike on the sidewalk to his right.  On observing Spencer,

Winters veered his car to the left to give the biker room.  Once Winters passed Spencer,

he returned his attention to the road and saw a woman, Chase McClurg, riding a

longboard in the bike lane at the point where it crossed through the turn lane.  Winters hit

his brakes.  Winters could not stop in time to avoid a collision.  Winters' car struck

McClurg.

At the time of the accident, Chase McClurg wore dark clothing and a green

backpack with reflective tape on it.  McClurg suffered head injuries and was transported

to the hospital.

Paul Winters reported to police that Jeremy Spencer rode his bicycle on the

sidewalk.  Nevertheless, during his deposition, Winters averred that Spencer rode his bike

in the turn lane, not on the sidewalk.  Later in the deposition, Winters testified that he

2

traveled southbound while Spencer and Chase McClurg traveled northbound such that he faced the two when the accident occurred. When asked whether he believed McClurg contributed to the cause of the collision, Winters replied:

> I would—I would—I don't—if there was anything she could have done, the only thing it could have been was to be wearing more reflective clothing of some type that might have reflected the lighting or my headlights or something sooner. Other than that, I—no.

CP at 58.

Jeremy Spencer, in a declaration, avowed that he and Chase McClurg travelled southbound and Paul Winters approached them from behind.

## PROCEDURE

Chase McClurg sued Paul Winters for negligence. In the complaint, McClurg alleged Winters acted unreasonably when:

> a. Failing to pass a pedestrian in a bicycle lane on the left at a safe distance in violation of RCW 46.61.110;
> b. Failing to exercise due care to avoid a pedestrian and failing to sound his horn, in violation of RCW 46.61.245;
> c. Changing lanes without ascertaining that such movement can be made safely, in violation of [RCW] 46.61.140;
> d. Exceeding a reasonable and safe speed for the actual and potential hazards then existing, in violation of RCW 46.61.400;
> e. Failing to exercise due care and caution, in violation of RCW 46.61.445;
> f. Operating a motor vehicle in a manner that is both negligent and endangers or is likely to endanger any person or property, in violation of RCW 46.61.525;
> g. Using a personal electronic device while driving, in violation of

3

RCW 46.61.672;
>    h. Failing to keep proper control of the vehicle;
>    i. Failing to yield the right-of-way;
>    j. Failing to keep proper lookout for other traffic and persons occupying the bicycle lane; and
>    k. Operating the vehicle in a negligent manner.

CP at 5-6. Paul Winters raised the affirmative defense of comparative fault.

Chase McClurg filed a motion for partial summary judgment seeking the dismissal of Paul Winters' contributory negligence defense. She argued Winters could not prove she was negligent when (1) she was not violating any statute, rule, or regulation by riding a skateboard within a designated bicycle lane and (2) no evidence suggested she could have taken action to avoid the collision.

In opposition to Chase McClurg's summary judgment motion, Paul Winters argued that, because McClurg was a "pedestrian" under RCW 46.04.400 at the time of the accident, RCW 46.61.250(1) required that she use a sidewalk if available. Because McClurg had access to a sidewalk, as evidenced by Jeremy Spencer's riding his bike on a sidewalk, McClurg violated RCW 46.61.250(1) by traveling in the bike lane in the roadway. According to Winters, McClurg's interpretations of the relevant statutes in her motion for partial summary judgment would invite absurd results as it would permit pedestrians to walk in the middle of the road between lanes of vehicular traffic.

4

The superior court granted Chase McClurg's summary judgment motion to dismiss the defense of comparative fault. Paul Winters filed a motion for reconsideration, which the court denied.

Paul Winters sought discretionary review. The notice for discretionary review reads:

> Defendant seeks discretionary review by the Court of Appeals, Division III, of the Order Denying Defendants' Motion for Reconsideration, entered on November 27, 2023.

CP at 130. The notice does not reference the order granting McClurg summary judgment. The notice only attaches the order denying reconsideration. The notice does not attach the order granting summary judgment.

In response to Paul Winters' request for discretionary review, Chase McClurg argued that Winters sought review only of the order denying reconsideration and not review of the order granting summary judgment. Our court commissioner granted review on the basis that the superior court committed obvious error when granting summary judgment on the issue of comparative fault. The court commissioner did not mention the order denying reconsideration.

LAW AND ANALYSIS

*Issue 1: Whether this court should review the superior court's decision under an abuse of discretion standard pursuant to CR 59 or review the decision de novo under*

5

No. 40153-7-III
*McClurg v. Winters*

*CR 56?*

    *Answer: It does not matter.*

    Chase McClurg underscores that Paul Winters asked for review of the superior court's order denying reconsideration in his notice for discretionary review. Conversely, the notice does not ask for review of the order denying summary judgment. In his appeal brief, however, Winters assigns error to both of the trial court's orders: (1) the order on McClurg's motion for partial summary judgment and (2) the order on Winters' motion for reconsideration. One might expect McClurg to contend that this court cannot review the order denying the summary judgment motion because Winters did not expressly request its review. McClurg instead forwards a subtler argument. She contends that this court may review the summary judgment order, but that we must review that order under an abuse of discretion standard that applies to motions for reconsideration, rather than the de novo review standard for summary judgment grants.

    Paul Winters, in his brief, replies that he sought review in this court of the superior court's "order denying *reconsideration* of the superior court's *order granting summary dismissal*" of his comparative fault defense. Reply Br. of Appellant at 2. His notice does not read that way, however. The notice reads: "Defendant seeks discretionary review . . . of the Order Denying Defendants' Motion for Reconsideration, entered on November 27, 2023." Notice of Discretionary Review, December 26, 2023. CP at 133-34

We determine to use the summary judgment standard of review, rather than the order on reconsideration standard of review for three reasons. First, our court commissioner accepted review of the order on summary judgment. Second, RAP 2.3(e) directs this court to review an order previously entered before the order on reconsideration if the previous order impacts the order on reconsideration. Third, even if we determine to only address the order on reconsideration, we would still employ the summary judgment standard because a basis for reconsideration is error at law, to which we do not defer.

Despite the absence of express language challenging the order on summary judgment, our court commissioner read the notice to seek "discretionary review of the Walla Walla superior court's orders granting Chase McClurg partial summary judgment as to Mr. Winters' affirmative defense of contributory negligence and denying reconsideration." Commissioner's Ruling, June 6, 2024, at 1. After analyzing the law and the facts most favorable to Paul Winters, the commissioner concluded: "it was obvious error for the superior court to grant summary judgment as to the issue of comparative fault." Commissioner's Ruling, June 6, 2024, at 11. The court commissioner's ruling assigns to us the question of whether the superior court properly entered summary judgment, not whether the superior court erred when denying reconsideration.

7

RAP 2.3(e) declares:

> Upon accepting discretionary review, the appellate court may specify the issue or issues as to which review is granted.

Chase McClurg did not timely object to the commissioner's ruling identifying the order granting summary judgment as the order for review. Under RAP 17.7(a), a party may object to a ruling of the commissioner only by a motion, filed within thirty days, to modify the ruling directed to the judges of the court.

RAP 2.4 provides, in relevant part:

> (a) Generally. The appellate court will, at the instance of the appellant, review the decision or parts of the decision designated in the notice of appeal or, subject to RAP 2.3(e), in the notice for discretionary review, and other decisions in the case as provided in sections (b), (c), (d), and (e) . . .
>
> (b) Order or Ruling Not Designated in Notice. The appellate court will review a trial court order or ruling not designated in the notice, including an appealable order, if (1) the order or ruling prejudicially affects the decision designated in the notice, and (2) the order is entered, or the ruling is made, before the appellate court accepts review . . .

(boldface omitted). Chase McClurg may not seek to strike Paul Winters' challenge to the order on summary judgment because of the language of RAP 2.4(b). The order on summary judgment impacts negatively the order on reconsideration. The order on reconsideration would have no importance if the order on summary judgment did not prejudice Winters.

In *Right-Price Recreation, LLC v. Connells Prairie Community Council*, 146 Wn.2d 370, 46 P.3d 789 (2002), the party seeking discretionary review only designated a discovery order. The Supreme Court, nonetheless, also reviewed an order denying a motion to dismiss and an order continuing a summary judgment motion filed before the party sought discretionary review. The three orders bore a relationship to one another.

In *Hood v. City of Vancouver*, 33 Wn. App. 2d 799, 564 P.3d 1009 (2025), the trial court order granting summary judgment to the city prejudicially affected its decision to deny a public records requester's motion to reconsider summary judgment. Thus, this court decided to review the summary judgment order even though the requester did not designate the summary judgment order in his notice of appeal. The trial court could not have ruled on the motion to reopen summary judgment without considering the underlying summary judgment order. *Hood v. City of Vancouver*, 33 Wn. App. 2d 799 (2025).

Despite agreeing we may review the summary judgment order, Chase McClurg still insists that we review the order for abuse of discretion because we review the order through the prism of the order denying reconsideration. We generally review rulings on reconsideration under an abuse of discretion standard. *In re Recall of Fortney*, 196 Wn.2d 766, 784, 478 P.3d 1061 (2021).

9

In this setting, the abuse of discretion standard of review and the de novo standard of review lead to the same ruling, as they do in most cases. The law might benefit from discarding the abuse of discretion and de novo standards and replace them with rules that state this court reviews an appeal for substantial evidence if and when the trial court resolves factual disputes. In turn, this court gives the trial court no deference when reviewing legal rulings by the superior court. Still, we call a legal error an abuse of discretion. *Doe v. Thurston County*, 4 Wn.3d 906, 921, 569 P.3d 1101, 1110 (2025).

CR 59 addresses motions for reconsideration. The rule declares:

CR 59
NEW TRIAL, RECONSIDERATION, AND AMENDMENT OF
JUDGMENTS

(a) Grounds for New Trial or Reconsideration.
On the motion of the party aggrieved, a verdict may be vacated and a new trial granted . . . or any other decision or order may be vacated and reconsideration granted. Such motion may be granted for any one of the following causes materially affecting the substantial rights of such parties:
. . . .
(8) Error in law occurring at the trial and objected to at the time by the party making the application; or
(9) That substantial justice has not been done.

(Boldface omitted). In his motion for reconsideration, Paul Winters merges subsections (8) and (9) by arguing the superior court committed legal error that caused substantial injustice. As already noted, a legal error automatically creates an abuse of discretion. When a motion for reconsideration entails a question of law, an appellate court acts upon

the motion independently and uncontrolled by the judgment of the lower court, as it would upon any other question of law which was brought to it upon appeal. *Gray v. Washington Water Power Co.*, 27 Wash. 713, 718-19, 68 P. 360 (1902), *overruled on other grounds by Rochester v. Seattle, Renton & Southern Railway Co.*, 75 Wash. 559, 135 P. 209 (1913); *also overruled by Larson v. City of Seattle*, 25 Wn.2d 291, 171 P.2d 212 (1946). In other words, it does not matter whether we assert de novo review or abuse of discretion review when the alleged error is legal.

This court reviews a trial court's summary judgment decision de novo. *Keck v. Collins*, 181 Wn. App. 67, 83, 325 P.3d 306 (2014). That is because neither the trial court nor the appellate court weighs the evidence. *Associated Press v. Washington State Legislature*, 194 Wn.2d 915, 920, 454 P.3d 93 (2019). Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Associated Press v. Washington State Legislature*, 194 Wn.2d 915, 920 (2019). Regardless of whether we address Paul Winters' request for review under CR 56 or under CR 59, we may exercise de novo review. We must determine whether the undisputed facts, viewed in a light favorable to Winters, still merit judgment as a matter of law on Winters' counterclaim for comparative fault.

*Issue 2: Whether Paul Winters presented sufficient evidence to raise a genuine issue of fact as to the comparative fault of Chase McClurg?*

11

*Answer 2: Yes.*

Paul Winters argues that the superior court erred in granting summary judgment on his contributory negligence defense because a rational trier of fact could have concluded Chase McClurg failed to exercise reasonable care for her own safety at the time of the accident. Winters further contends that the testimony he offered during his deposition does not foreclose a jury from concluding McClurg failed to exercise reasonable care for her own safety and that this failure was a proximate cause of the accident.

In reviewing a trial court's summary judgment ruling, this court undertakes the same inquiry as the trial court and views all facts and reasonable inferences in a light most favorable to the nonmoving party. *Associated Press v. Washington State Legislature*, 194 Wn.2d 915, 920 (2019). "Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Associated Press v. Washington State Legislature*, 194 Wn.2d 915, 920 (2019).

Washington, like most other states, has shredded the common law notion that contributory negligence defeats in total a plaintiff's suit for negligence. Since 1973, contributory negligence, now known as comparative fault, will reduce rather than prevent a plaintiff's recovery. Former RCW 4.22.010 (1973), *repealed by* LAWS OF 1981, CH. 27, §17.

Washington now functions under RCW 4.22.005. *Gleason v. Cohen*, 192 Wn. App. 788, 794, 368 P.3d 531 (2016). RCW 4.22.005 provides:

> In an action based on fault seeking to recover damages for injury or death to person or harm to property, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery. This rule applies whether or not under prior law the claimant's contributory fault constituted a defense or was disregarded under applicable legal doctrines, such as last clear chance.

In order to prove comparative fault, the defendant must show that the plaintiff had a duty to exercise reasonable care for her own safety, that she failed to exercise such care, and that this failure in part caused her injuries. *Gorman v. Pierce County*, 176 Wn. App. 63, 87, 307 P.3d 795 (2013). An issue of comparative fault generally poses a factual question for the jury unless the evidence would lead all reasonable minds to the conclusion that the plaintiff exercised the care a prudent person would have exercised under the circumstances. *Jaeger v. Cleaver Construction, Inc.*, 148 Wn. App. 698, 713, 201 P.3d 1028 (2009). We agree with Paul Winters that his evidence creates questions of fact. Among other acts that a jury could find unreasonable, Chase McClurg wore dark clothing while traveling in the street in the early morning hours. The jury could also find that McClurg acted unreasonably and likely in violation of a statute by riding her board in a bike lane when a sidewalk was available.

RCW 5.40.050 addresses fault in the context of violation of a statute.

> A breach of a duty imposed by statute, ordinance, or administrative rule shall not be considered negligence per se, but may be considered by the trier of fact as evidence of negligence.

Because Chase McClurg rode a longboard, the law treats her as a "pedestrian."

Under RCW 46.04.400,

> "Pedestrian" means any person who is afoot or who is using a wheelchair, a power wheelchair, or a means of conveyance propelled by human power other than a bicycle.

RCW 46.61.250 governs the conduct of pedestrians on roadways. The statute provides,

in relevant part:

> (1) Where sidewalks are provided and are accessible, it is unlawful for any pedestrian to walk or otherwise move along and upon an adjacent roadway.

"Roadway" is not defined in chapter 46.61 RCW. The term, however, is defined in

chapter 46.04.500 RCW.

> "Roadway" means that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the sidewalk or shoulder even though such sidewalk or shoulder is used by persons riding bicycles. In the event a highway includes two or more separated roadways, the term "roadway" shall refer to any such roadway separately but shall not refer to all such roadways collectively.

In *Borromeo v. Shea*, 138 Wn. App. 290, 156 P.3d 946 (2007), this court ruled that

a bicycle lane is part of a roadway.

14

At the time of the accident, Chase McClurg had a sidewalk available for use. At least, a question of fact exists as to the availability of a sidewalk. Therefore, McClurg should not have ridden her board in the bike lane.

Every person using a public street or highway has a duty to exercise ordinary care to avoid placing themselves or others in danger and to avoid a collision. *Robison v. Simard*, 57 Wn.2d 850, 360 P.2d 153 (1961). Both drivers and pedestrians must exercise a degree of care that a reasonably prudent person would exercise under the same or similar circumstances even though they may have the right-of-way or be the favored driver. *Robison v. Simard*, 57 Wn.2d 850 (1961); *Hanson v. Anderson*, 53 Wn.2d 601, 335 P.2d 581 (1959).

Chase McClurg impliedly argues that Paul Winters, during his deposition, conceded that she did not act unreasonably. Nevertheless, Winters testified during his deposition that he did not think McClurg could have done anything differently to avoid the collision other than wearing more reflective clothing or something that could have reflected his headlights sooner. Thus, Winters did not concede the absence of fault. Winters' testimony also did not address the possible violation of RCW 46.61.250.

CONCLUSION

We reverse the summary judgment dismissal of Paul Winters' affirmative defense of comparative fault and remand for further proceedings.

No. 40153-7-III
*McClurg v. Winters*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:


_____
Murphy, J.

_____
Lawrence-Berrey, C.J.

16